## MATLOCK ET AL. v. LOCK ET AL.

[No. 5,013. Filed January 26, 1905. Rehearing denied June 9, 1905. Transfer denied June 8, 1906.]

1. WILLS.—*Construction.*—*Intention.*—Courts are guided in the construction of a will by the intention of the testator, and where not in contravention of law, such intention will be given effect. p. 292.

2. SAME.—*Estates Devised.*—*Determinable Fee.*—A will devising in fee, to a grandchild, certain real estate provided such grandchild pays all taxes, keeps up necessary repairs and does not encumber by mortgage or sell said real estate before she arrives at the age of forty, and if she die or "attempt to convey, mortgage or encumber all or any part of said real estate," then over to other devisees, creates in such grandchild a determinable fee. *Per* Roby, J., and Comstock, C. J. It creates a conditional fee. *Per* Wiley, J. p. 293.

3. SAME.—*Real Estate.*—*Alienation.*—*Suspending Power of.*—*Statutes.*—A will devising lands to a grandchild and if such grandchild shall, before she arrives at the age of forty, "attempt to convey, mortgage or encumber all or any part of said real estate," then over to other devisees, does not violate §3382 Burns 1901, §2962 R. S. 1881, providing that the power to alienate shall not be suspended longer than the existence of a life in being, etc., since such devisee is a life in being at the time such will takes effect. p. 304.

4. SAME.—*Bequests.*—*Trusts.*—A bequest to testator's grandchild to be held in trust until such grandchild arrives at the age of forty, at which time such bequest shall be delivered absolutely, is valid and it is the duty of the trustee to administer such trust until such time arrives. p. 306.

From Rush Circuit Court; *Douglas Morris,* Judge.

Suit by Mellie Lock and others against Martha E. Matlock and others. From a decree for plaintiffs, defendants appeal. *Reversed.*

*Smith, Cambern & Smith,* for appellants.

*Will M. Sparks, Cullen & Megee* and *Douglas Morris,* for appellees.

WILEY, J.—Suit by appellees against appellants for the construction of a will and to quiet title to real estate. The complaint was originally in three paragraphs, to the first of which a demurrer was overruled. An answer was filed in denial, and subsequently appellees dismissed their third paragraph of complaint, which asked for a partition of the real estate.

Trial by the court, and upon proper request a special finding of facts was made and conclusions of law stated thereon. The substance of the conclusions of law is that, under the will in controversy, the appellee Mellie Lock took a fee-simple title to the real estate involved, upon the death of the decedent, who was her grandfather, and that certain provisions of the will which attempted to fix and designate specific conditions upon the contingency of which the fee-simple title should rest in Mellie Lock were invalid and void.

The errors assigned are that the court erred in overruling the demurrer to the first paragraph of the amended complaint, and that the court erred in each of its conclusions of law.

It is questionable whether appellants are entitled to have considered the question raised by overruling their demurrer to the first paragraph of the amended complaint, in that counsel have not specifically, in argument, stated any objections to said paragraph, or cited any authorities in support of the contention that the paragraph is insufficient.

The fact that the court made a special finding of facts, stating its conclusions of law thereon, is sufficient to present every question that affects the interests of the contending parties, and it is unnecessary, therefore, for us to consider or pass upon the sufficiency of the pleadings.

Elisha King was the testator and the father of appellant Martha E. Matlock, and the grandfather of appellee Mellie Lock. At the time the testator executed his original will he had one daughter, the appellant Martha E. Matlock, and three grandchildren living, one of whom was appellee Mellie Lock, and a childless, second wife. In his original will he made certain bequests to all of the persons named. Before his death, however, two of his grandchildren died without issue, and upon the death of each of them he executed a codicil to his will. After his death the appellant Martha E. Matlock qualified as executrix and trustee under the will, and before the commencement of this suit, by an agreement between all of the parties in interest, the widow elected to take under the law and not the will, and in this controversy she has no interest. Appellee Mellie Lock is the mother of one child living. Martha E. Matlock was made a party both in her individual and fiduciary capacity.

The facts to which the law must be applied, and the respective rights of the parties determined, as disclosed by the special findings of the court, are as follows: Elisha King died testate on February 6, 1902. He left a will and two codicils, which were duly executed and probated. He left, as his only heirs, except his widow, appellant Martha E. Matlock, his daughter, and appellee Mellie Lock, his granddaughter. The court further found that the will and the two codicils of the testator had been duly filed and admitted to probate; that appellant Martha E. Matlock had qualified and was acting as executrix and trustee under the will. The special findings set out in full the will and the two codicils, but it is only necessary for us to refer to those provisions of the will that are to be construed in the determination of the rights of the respective legatees. But to do so it is important, so as to gather the full intent of the testator, to set out such provisions of the will and codicils at some length.

By item two of the will the testator makes certain and specific provisions for his wife, which include, among other things, a life estate in certain real estate of which the testator died seized, and which is specifically described. After such provisions made for the wife, said item number two continues as follows:

"And at her death I will and devise in fee all of the above-described real estate equally to my daughter Martha E. Matlock and my grandchildren, Ulysses, son of my son Henry C. King, deceased, Tennie B. King, daughter of my son Samuel F. King, deceased, and Mellie McFatridge, daughter of my daughter Indiana McFatridge, deceased. Provided, that my above-named grandchildren shall pay their part of all taxes and keep up all necessary repairs on their part of said real estate and not encumber by mortgage or sell their respective interest in said real estate before they shall severally arrive at the age of forty years. And provided further that if either of my above-named grandchildren shall die before their arrival at the age of forty years leaving a child or children born in wedlock living, their respective child or children shall have their share in said real estate. And it is provided further that if either of my said grandchildren shall die without leaving any living child or children before their arrival at the age of forty years, their interest in said real estate shall go equally to my said daughter and if she is dead her part to her children and to my surviving grandchildren above named, or if they are dead then to their living children share and share alike. It is my will that my daughter Martha E. Matlock is to have her interest in said real estate without any reservation except as above set forth."

By item three the testator devises and bequeaths to appellant Martha E. Matlock certain described real estate, upon which he fixed the value of $13,000, and in said item he also devises and bequeaths to her "one equal one-fourth part" in value of all of the other real and personal estate belonging to him, not otherwise disposed of in said will.

By item four he devises and bequeaths to his grandson Ulysses King certain real estate, specifically describing it. Upon this bequest and in the same item he made the following provision:

"Provided that he will pay all taxes and keep up all necessary repairs on all of the above-described real estate, and not mortgage or in other manner encumber the same or any part thereof before he arrives at the age of forty years. I value said land at $13,000. I also give and devise unto said Ulysses, the undivided one-fourth part in value belonging to me all other property not otherwise disposed of by me upon the same terms and conditions as above set forth (I mean by the word property both real and personal property not otherwise disposed of herein). It is further my will that if he should die before arriving at the age of forty years leaving surviving him a child or children born in wedlock, that the above-described real estate last described and all property herein bequeathed to him both real and personal shall go to his then living child or children. And it is further provided and is my will that if the said Ulysses shall die before his arrival at the age of forty years without leaving either a child or children, that the interest in my estate herein bequeathed to him shall go share and share alike to my said daughter and grandchildren surviving, or to their children then living. It is my will that said Ulysses shall have at my decease immediate possession of all the real estate herein specifically willed him and the rents and profits thereof after the payment of all taxes and necessary improvements thereon, and the annual interest on the one-fourth part of my personal property or rents of real estate not otherwise disposed of herein. It is my will that upon his arrival at the age of forty years all restrictions above mentioned on his interest in my estate be removed."

By item five he devises and bequeaths to his granddaughter Tennie B. King certain property, both real and personal, specifically describing it, and places upon it the following conditions:

"She to have all the above property both real and personal upon the same terms and conditions as my grandson Ulysses herein set forth."

By item six he devises and bequeaths to his granddaughter Mellie McFatridge certain real and personal property, describing the same, upon which he places a value of $13,000, and the following further bequest:

"Also the one-fourth part in value of all other real and personal property owned by me at my decease. She to have all of said real estate and personal property upon the same terms and conditions as that willed to my said grandson Ulysses King."

In this same item he charges all of the above-named heirs with specific advancements, giving the amount advanced to each one.

The final clause in the will is as follows:

"My object in making this will is to make my said child and grandchildren equal in the final distribution of my estate."

In codicil number one, executed on September 25, 1891, the testator recites the fact that, since the execution of his original will, his grandson Ulysses King has died, and by said codicil he makes certain other provisions as follows:

"I hereby devise and bequeath to my daughter Martha E. Matlock all the real estate devised by item four of said will to said Ulysses King and the same is to be charged to my said daughter at the sum of $13,000."

He then proceeds in said codicil to make certain devises and bequests to his granddaughters Tennie B. King and Mellie McFatridge, in the following language:

"I devise to my granddaughters Tennie B. King and Mellie McFatridge each real or personal estate of the value of $13,000 to equalize them with said Martha E. Matlock, on the terms and conditions hereinafter mentioned. The residue of my estate not herein devised, which includes the fee of the real estate de-

vised to my wife and all the other real and personal property of which I may die seized, I dispose of as follows, after the payment of expenses of settling my estate and equalizing the advancements as set out in my will and the payment of the monument as provided for, I devise one-third to my daughter Martha E. Matlock, and I devise one-third to my granddaughter Tennie B. King, and one-third to Mellie McFatridge, the last two devises as well as all property devised to said Tennie B. King and Mellie McFatridge in the original will and in this codicil upon the following conditions and restrictions: Said Tennie B. King and Mellie McFatridge to have the rents and profits of the real estate received by them until they arrive at the age of forty years and to keep all taxes and liens paid on said real estate and said Tennie B. King and Mellie McFatridge shall have no power to mortgage or convey said real estate until they arrive at the age of forty years. And in case they or either of them attempt to convey, mortgage or encumber all or any part of said real estate, it is my will that they forfeit all right, title and interest to that part of said real estate so attempted to be conveyed by them, and my executor or the trustee appointed under this will shall take charge of said real estate attempted to be conveyed and hold the same until the party attempting to make such conveyance arrives at the age of forty years, the rents and profits during said intervening time to go to my other heirs. All the personal estate or moneys received by my executor from the sale of any land or lands to be placed at interest on first mortgage security and kept at interest by a trustee to be appointed as hereinafter indicated, and after paying taxes and expenses the interest to be paid annually to said Tennie B. King and Mellie McFatridge. When said Tennie B. King and Mellie McFatridge or either of them arrives at the age of forty years their shares in said personal estate shall be surrendered to them as they arrive at such age, and the real estate above mentioned shall become theirs absolutely. I hereby appoint my daughter Martha E. Matlock executrix of this my last will and a trustee to take charge of the personal estate as hereinbefore mentioned."

By codicil number two, executed on January 6, 1900, the testator recites the death of his granddaughter Tennie B. King, and proceeds with the disposition of his estate as follows:

"My granddaughter Tennie B. King having died since the making of said will and codicil, I hereby devise and bequeath to my granddaughter Mellie Lock, formerly McFatridge, all the real estate devised in item five of said will to said Tennie B. King on the same terms as to rents, alienation, mortgages and possession as the same was devised to said Tennie B. King by said will and codicil number one, and on the same terms as the other real estate is devised to said Mellie Lock in said will and codicil, the same to be charged in the division of my estate to Mellie Lock at the sum of $10,000. I also give and bequeath to said Mellie Lock, lots numbered 168 and 169 in Payne, Reeve & Allen Trustee's Addition to Rushville, Indiana, on the same terms and conditions as all the other real estate devised in said will and codicil is devised to said Mellie Lock, the same to be charged to her in the division of my estate at the sum of $3,000. I revoke so much of codicil number one as devises to my granddaughters Mellie McFatridge, now Lock, and Tennie B. King real and personal estate of the value of $13,000, and in lieu thereof devise to my said granddaughter Mellie Lock, out of my personal estate, a sum sufficient to equalize her in the division of my estate with Martha E. Matlock, the same devised on the terms and conditions set out in codicil number one of my said will. I give, devise and bequeath to Martha E. Matlock the south end and halves of lots seventeen and eighteen, block sixty-nine, city of Lincoln, Nebraska. I give, devise and bequeath to Mellie Lock, my granddaughter, the north end and halves of lots seventeen and eighteen, block sixty-nine, city of Lincoln, Nebraska, on the same terms and conditions as real estate is devised to her in my original will and codicil number one. I have kept a book of advancements which shall be final and determine all questions of advancements on a final division of my estate. It being my true in-

tent by this will and codicils that one-half of my estate considering all advancements shall go to Martha E. Matlock, and one-half to Mellie Lock, subject to all conditions, limitations and restrictions as set out in said will and codicils thereto."

The court further found that the widow of the testator elected to take under the law, and that an agreement was made between her and appellant Matlock and appellee Lock by which she accepted certain interests in the estate, and released the estate from all other liability. The court found that Ulysses S. King and Tennie B. King, grandchildren of the testator, died prior to his death; that Mellie McFatridge, the testator's grandchild, was married to James Lock on December 8, 1898, and that said Mellie Lock was twenty-eight years old at the time of her grandfather's death; that Mellie Lock was the mother of Mildred Lock, who is an infant, and who was a party below and appeared to the action by a guardian *ad litem;* that said Mildred was born prior to the death of the testator; that Martha E. Matlock, since the death of her father, has entered into and is now in possession of all the real estate willed to her; that appellee Mellie Lock has entered into and is now in possession of all the real estate specifically devised to her, but that she has received no part of the personal property nor any part of the real estate not specifically devised to her by said will, but belonging to her by virtue of the residuary clauses in said will and codicils; that all the real estate belonging to said estate, not specifically devised, is now, and has been since the death of the testator, in the possession and control of Martha E. Matlock, trustee, she claiming the right to possession and control thereof as trustee by virtue of the will and codicils; that said Martha E. Matlock, as executrix of said will, is now, and has been ever since her qualification as such, in possession of all the personal property belonging to said estate, claiming the right to receive the one-half part thereof as trustee for

Mellie Lock upon the final settlement of said estate, and holding the same until said Mellie Lock arrives at the age of forty years.

The court further found that the personal property and choses in action of the estate aggregate in value $23,980.70 as shown by the appraisement, but that the actual value is in excess of that amount; that the residence in which Mellie Lock lives, and the only place she has to live, was built more than forty years ago, is in need of repair, and that said Mellie Lock has no means other than that held by Martha E. Matlock, as executrix and trustee, which the latter refuses to pay to the former, although all of the debts of the estate have been paid. The court also found that the real estate specifically devised to Mellie Lock is in bad repair, and that she cannot get the benefit of the same without spending large sums in making such repairs, and that to do so it will be necessary to use the personal property, or the proceeds arising from the sale of the same, or mortgage or encumber said real estate; that there is certain real estate, of which the testator died the owner, not specifically devised, and that Martha E. Matlock claims the right to the possession thereof and to all the personal property as trustee for said Mellie Lock until she arrives at the age of forty years, and refuses and will continue to refuse to pay said Mellie Lock any part of the proceeds arising from the sale of the personal property, or to deliver to her any part of the share in the Rush County National Bank, or to permit said Mellie to exercise any control over the real estate not specifically devised, before she arrives at the age of forty years; that said Martha E. Matlock, as executrix and trustee, is holding all the personal property of which decedent died seized, amounting to about $25,000; that she claims to hold the same pursuant to the terms of said will, and now threatens to continue holding, as trustee, said Mellie Lock's one-half interest in said personal property until she arrives at the age of forty years. The court

then proceeds to find and state specifically the real estate which Mellie Lock took possession of and now holds, and finds that each of the defendants (appellants here) is claiming some interest in said real estate adversely to her.

As conclusions of law the court stated: (1) That the testator, Elisha King, did not die intestate as to any of his property, real or personal; (2) that appellee Mellie Lock is now, and has been since the death of the testator, the sole owner in absolute fee simple of certain described lands, and that all restrictions set forth in the will and codicils against the appellee's right to alien or encumber same are void, and that she is entitled to a decree quieting her title to said lands; (3) that by the provisions of the will and the codicils appellee Mellie Lock is now, and has been since the death of the testator, the owner in absolute fee simple, as tenant in common with the defendant Martha E. Matlock, of the undivided one-half of certain described lands, and that all restrictions in said will and codicils against her right to alien and encumber the same are void, and that the claim of appellant Martha E. Matlock to hold said undivided one-half of said lands, as trustee, until said Mellie arrives at the age of forty years, is invalid, and that she is entitled to have her title thereto quieted; (4) that said Mellie Lock, by virtue of the will and codicils, is the owner in fee simple absolute, as tenant in common with appellant Martha E. Matlock, subject to the life estate of the widow, of the undivided one-half of certain described lands, and that all restrictions in said will and codicils against her right to alien and encumber the same are void, and that she is entitled to a decree quieting her title therein; (5) that by virtue of the provisions of the will and codicils, the title to all the personal property of the testator vested in Mellie Lock and Martha E. Matlock, subject to the payment of his debts, his widow's rights and the expense of administration, and that on the final settlement of said personal estate, after equalizing advancements, the remaining per-

sonal estate should be divided equally between Mellie Lock and Martha E. Matlock; that said Mellie is entitled to said personal property, free from any trust or restrictions, to hold the same absolutely and in her own right.

In the construction of a will, courts must regard the intention of the testator, if such intention can be ascertained from the will itself. When such intention is ascertainable, it is the duty of courts to respect the clearly expressed wishes of the testator, unless they contravene some rule of law. This doctrine is so elementary and familiar that we do not pause to cite authorities.

Taking the will and codicils, and considering them as a whole, as we must, the intention of the testator is clearly manifest. That intention tersely and plainly stated is that he intended to divide his estate between his daughter Martha E. Matlock and his granddaughter Mellie Lock; that as to the former he intended that she should take a present interest in the one-half of all his estate, both real and personal, and that the latter should take a contingent or conditional interest in the one-half thereof. In other words, he intended to give to his daughter one-half of his real estate in fee simple and one-half of his personal estate outright, and intended that her right thereto should become absolute upon his death; and he intended to give his granddaughter the remaining half of his real estate in fee simple, and the remaining half of his personal estate, subject to certain "conditions, restrictions and contingencies." Those conditions are clearly and plainly stated by the testator, and are that her absolute right to the property depends upon her living to be forty years old; that she should pay taxes, keep up repairs, and that she should not alien or encumber the real estate. If she does not live to be that old, then all the property devised to her shall vest absolutely in her child or children, if any are living, and if not, then in appellant Martha E. It seems to us that the intention of the

testator is made manifest throughout the will, but, if that can be doubted, the whole is clarified beyond dispute by the last clause in the second codicil, in which he uses this language:

"It being my true intent by this will and codicils that one-half of my estate considering all advancements shall go to Martha E. Matlock, and one-half to Mellie Lock, subject to all conditions, limitations and restrictions as set out in said will and codicils hereto."

Keeping in mind the rule that in the construction of a will the intention of the testator, if such intention is expressed or made manifest, should control, and holding that the testator in the will before us clearly and unmistakably expressed his intention as to the disposition he desired to make of his estate, the next inquiry which suggests itself is whether the intention here expressed is violative of any established rule of law. If it is not, then it is the plain duty of the court to construe the will in harmony with the intention of the testator, so that the estate he intended to devise to the appellee may vest in her, burdened with the "conditions, limitations and restrictions" imposed. Notwithstanding the clearly expressed intention of the testator, if that intention, and the conditions, limitations and restrictions imposed contravene any rules of law, then they must fall, and the estate devised to the appellee must vest in her in harmony with the law.

The writer is of the opinion that the will gave to the appellee a conditional fee, depending upon her living to be forty years old, and, by the express provisions of the will, if she attains that age the estate is to vest absolutely in her. There are many cases in the reports where our court has had under consideration the construction of wills wherein conditional fees have been devised, and we will refer to some of them in support of our conclusion that the estate the testator intended to devise to appellee was and is a conditional fee.

In the case of *Jones* v. *Miller* (1859), 13 Ind. 337, the

following provision of a will was under consideration: " 'I give to Paulina Miller and Alexander Miller, the heirs of Nancy Miller, my' daughter, $1 each. * * * I further direct that if the aforesaid Samuel Stephen, my son, should decease without a lawful heir or heirs, that all that part of my estate, both real and personal, set off for the said Samuel Stephen, my son, shall be divided in equal shares between the aforesaid Paulina Miller and Alexander Miller,' " etc. By a former provision of the will the testator in that case gave to his son, Samuel Stephen, all of his real and personal estate with certain specific exceptions. Samuel Stephen under the devise made to him entered upon the real estate and sold it to appellants. He afterward died without lawful issue, and it was held that the estate devised to him was a conditional fee, depending upon his having a lawful child or children, and he having died without such issue having been born to him, his estate became divested at his death, and the fee thereupon vested in Paulina Miller and Alexander Miller, and the purchasers from Samuel took nothing by his deed. The court also held in that case that the will was not in conflict with the statute against perpetuities.

In the case of *Smith* v. *Hunter* (1864), 23 Ind. 580, the will of Samuel D. Hunter was under consideration. By the will he devised to his adopted son, David S. Meriter, certain real estate on the following conditions: (1) That he should live with the widow of the testator and be obedient and kind to her until he should be twenty years of age; (2) that the expenses of his education from the time he should become eighteen until he reached the age of twenty years should be defrayed without expense to the widow, or out of the land devised to him; (3) that, should he die childless, the land should belong to Icophena Hunter, daughter of the testator, and her heirs. By the will the control of the land devised to Meriter was given to the widow until the devisee arrived at the age of twenty years.

Subsequently the guardian of Meriter sold the land by order of court when he was about sixteen years of age, and afterward he died childless. The action was one in ejectment against the purchasers at the guardian's sale by the heirs of Icophena Hunter, subsequently deceased. In the decision of the case the court said: "That the purchaser at the guardian's sale could take no greater estate in the land than the ward had, is a proposition so clear that it would be scarcely pardonable to dwell upon it. The pertinent inquiry then is, what was the nature of the estate of David S. Meriter in the land in controversy? * * * It is quite evident that during his lifetime he held a fee simple conditional, and dying childless there was a failure of the condition; and by the will the estate went to the heirs of Icophena, by executory devise, a fee being thus limited to take effect after a fee. It would follow, in this state of the case, that the plaintiffs must recover."

In the case of *Shimer* v. *Mann* (1885), 99 Ind. 190, 50 Am. Rep. 82, it was held that the devise of the rents and profits of lands to a devisee, named in the will, until his youngest child should become of age, and that "upon the happening of which event the fee simple of said lands shall then vest absolutely in said" person "and his heirs, and may by him or them be disposed of as he or they may judge best for his or their interests," vested in such devisee, upon the event of his youngest child reaching the age of twenty-one years, the fee simple of the real estate thus devised.

The language of the court in the decision of that case is so pertinent to the question here involved that we quote the following: "The devise of the income of the land to Samuel B. Mann until the youngest child becomes of age is neither unintelligible, nor is it inconsistent with the theory that the testatrix intended that he should take a fee upon the happening of that event, nor does it even make an unreasonable testamentary disposition of the land. It is perfectly reasonable to presume, what, in truth, the language plainly

imports, that the testatrix meant to deprive him of the power of disposing of the property so long as his children were unable to make their way in the world, so that he should have means of supporting them that he could not fritter away or lose by speculation or mismanagement. It may be well that she meant that as long as his children were not of age the power of disposition should be fettered, and that as soon as they attained full age he should have complete power over the property to do with it as he chose. Such a scheme of testamentary disposition is quite intelligible and perfectly reasonable, and in this instance entirely consistent with the whole frame and tenor of the will. More apt technical words to vest an estate, ripening into an absolute and unconditional fee upon the happening of a prescribed condition, could not have been chosen, than those adopted, and these words are in harmony with the general scheme evidenced by the whole tenor of the instrument by which the testatrix declared her intention regarding the disposition of her land. * * *. It is by no means uncommon to affix conditions to a devise, and a less estate may be granted to continue until the happening of a prescribed event, then to enlarge into an absolute fee. This is what the will now before us does. * * * We need not, however, decide the question whether the estate in fee vested absolutely in Samuel B. Mann at the time of the testatrix's death, for, conceding that he took only a conditional fee, still, as the condition upon which the estate was granted had happened, his rights became absolutely vested. If the estate was a conditional fee, it became absolute when the contingency arose which destroyed the force of the condition. 1 Preston, Estates, 476. We think that the devise must be regarded as creating a conditional or limited fee, restricting the right of alienation until the youngest child of the devisee arrives at full age."

In the case of Boling v. Miller (1893), 133 Ind. 602, the following provision of a will was construed: " 'I further

will and direct that at the death of my wife the whole of my estate be divided into three equal shares, and I give and devise one of such shares to my son, George L. Boling, and one share to my daughter, Sarah M. Morris, and one share to my grandson, Clemuel N. Boling, provided he attains the age of twenty-one years. Should my grandson die without issue, then I will and direct that the share he would have received shall be divided equally between George and Sarah, and if either be dead, to go to their descendants according to the laws of descent.' "

In that case the Supreme Court held that, under the law in this State, land may be devised to a person in fee, to be divested on the failure of certain conditions, and then to vest in other persons. And in deciding the case the court said: "In our opinion, under the well-settled rules which we have stated, the fee vested in the grandson, Clemuel N. Boling, at the death of the testator, subject to be divested in case he did not live until he was twenty-one years of age, and to vest in the son and daughter, or their heirs, in case said Clemuel N. died without issue."

In the case of *Corey* v. *Springer* (1894), 138 Ind. 506, the will of Gabriel Springer was presented for construction. Item four of the will was as follows: " 'At the death of my wife, if she shall not marry again, I bequeath all my property, share and share alike, to my children. If any of my children shall be dead at the time of such distribution or disposition, leaving children, such children are to take the share of their deceased father or mother, as the case may be.' "

In that case the testator died leaving surviving him his widow, one son and two daughters, as his sole heirs. The son John J. died testate, leaving no wife or issue surviving him, and the question at issue was, what estate John J. had in the land of his deceased father? And the question arose upon the application of the executor of the estate of John J. to sell the real estate to which he might have been

entitled under the will, for the purpose of paying his debts. It was the contention of the appellant that the widow took an estate for life in the lands in controversy, and that the remainder in fee vested in Gabriel Springer's children, one of whom was John J.; and further that such remainder in fee vested absolutely and unconditionally in John J. at the time of his father's death. The appellees contended that after carving out a life estate for the widow, it was the manifest intention of the testator to give to his children living at her death; and to the descendants of such as were then dead, a vested remainder; and that the testator appointed a fixed time when the conditional fee should ripen into an absolute fee in his children, and by his will fixed the time for the distribution of his estate at the death of the widow. In the decision of the case the court used this language: "Here the testator, in language as clear and unmistakable as could be employed, fixes the time for 'such distribution' or final disposition to occur, viz., 'at the death of his widow.' Until this event shall happen, he holds the fee conditional and in abeyance, subject to alteration, and only to ripen and fasten absolutely in his children surviving at the death of his unmarried widow. Appellant's counsel state the rule correctly, that the law favors vested estates, and remainders will never be held to be contingent when they can consistently, with the intention of the testator, be held to be vested. Words of survivorship, generally, in the absence of an expressed or implied intention to the contrary, are construed to refer to the testator's death. *Boling* v. *Miller* [1893], 133 Ind. 602; *Davidson* v. *Bates* [1887], 111 Ind. 391; *Harris* v. *Carpenter* [1887], 109 Ind. 540; *Davidson* v. *Koehler* [1881], 76 Ind. 398. * * * But the converse is true, that where there is an expressed or fairly implied intention to the contrary, the law will carry into effect the evident purpose of the testator. And where the testator fixes the time, by expressed or fairly implied intention, for the distribution of his estate to his children,

at the death of his widow, the law will uphold its purpose and intention. *Wood* v. *Robertson* [1888], 113 Ind. 323. A conditional fee may be created by will as well as by a deed. It is by no means uncommon to affix conditions to a devise, and a less estate may be granted to continue until the happening of a prescribed event, then to enlarge into an absolute fee. *Shimer* v. *Mann* [1885], 99 Ind. 190, 50 Am. Rep. 82. It is evident, in this case, that John J. Springer, by the terms of the will, took a conditional fee; that his estate in expectancy was to enlarge and ripen into an absolute fee at the death of the widow; that he having died prior to that event his estate was a defeasible one, which has been defeated, and there remains no interest which the appellant, as executor, can seize upon or sell by the order of the court to pay his debts. A will ought to be so construed as to give effect to all its provisions, and make it a harmonious whole."

In the more recent case of *Tindall* v. *Miller* (1896), 143 Ind. 337, the will provided that the testator's wife should have certain property "so long as she may live, * * * and at the death of my wife the above described property shall pass absolute to my daughter Julia, if she still survives. If she should be deceased, it is my desire that the property pass to her heirs."

In that case it was held that the devise in dispute was a vested remainder to Julia, the enjoyment of which was postponed to her or her heirs until the death of her mother. The court used the following language: "We do not question that if the fair meaning of a will fixes upon a definite future event as determining the time when title shall pass, then a remainder so devised will be conditional upon the happening of such event. The intention of the testator, however, so to devise his property must be clear."

The case of *Moore* v. *Gary* (1897), 149 Ind. 51, is also in point. The question in that case involved the construction of items six and seven of the will of Mahlon Brown,

which are as follows: "Item Sixth. At the death of my wife, or at my decease, if I should survive my said wife, I give, grant, devise, and bequeath all the remaining portion of my personal property, including money on hand, or outstanding, and all my real estate of every kind and nature whatever, to said John C. Wells and to his heirs, being his own children, forever. Item Seventh. I further direct that if said John C. Wells shall die without issue, that is without heirs, being his own children, lawfully begotten, living at the time of his death, or if said John C. Wells shall die before my said wife, and she should survive me, then at her death, or if I should survive both my wife and said John C. Wells, then at my death, my estate, or the remaining part thereof, shall be reduced to money by the sale of the real and personal property other than money, and the same, when so reduced to money, shall be divided into three equal parts, and I devise and bestow the same as follows, viz."

The appellees claimed that John C. Wells took an estate in fee under item six of the will, and that the devise over in item seven was void. The trial court took that view of the law, and rendered judgment for appellees, who claimed under Wells. It was held that the law not only favors the vesting of remainders, but also presumes that the words postponing the enjoyment of the estate relate to the beginning of the enjoyment of the remainder, and not to the vesting of such an estate, citing *Moores* v. *Hare* (1896), 144 Ind. 573. In the opinion the court used the following language: "It is contended by appellees that under the law as declared by this court in *Fowler* v. *Duhme* [1896], 143 Ind. 248, and *Moores* v. *Hare* [1896], 144 Ind. 573, said clause of item seven refers to the death of John C. Wells in the lifetime of the testator. The rule is, that where real estate is devised in fee simple to one, with a devise over, if the first taker should die without issue living at the time of his death, the words refer to a death without issue during

the lifetime of the testator, unless there is an expressed or implied intention to the contrary. *Fowler* v. *Duhme, supra,* and cases cited; *Moores* v. *Hare, supra,* and cases cited; * * * *Heilman* v. *Heilman* [1891], 129 Ind. 59. * * * It is a canon of interpretation that no word or clause in a will is to be rejected to which a reasonable effect can be given, and that effect must be given to every part of a will if possible. It is clear, we think, that the words in the first clause in said item, being the first condition stated, referred to the death of Wells after the death of both the testator and his widow, because by the two following clauses the testator provided for the death of Wells before the death of the widow, and before the death of the testator. The words in said item refer, therefore, to the death of Wells after, as well as before, the death of the testator. For this reason the case in hand does not fall within the rule declared in *Fowler* v. *Duhme, supra,* and cases of that class."

In that case Wells died after the testator and his widow, without living issue, and it was finally held that the devise over took effect at that time, and that the same was valid. It followed that the judgment was reversed, and that under the seventh item of Brown's will the administrator was authorized to convert the estate into cash, and divide the proceeds, as directed by subsequent provisions of the will.

The same rule as declared by the authorities cited prevails in other jurisdictions, as exemplified by the following cases: *Gannon* v. *Peterson* (1901), 193 Ill. 372, 62 N. E. 210, 55 L. R. A. 701; *Keepers* v. *Fidelity Title, etc., Co.* (1893), 56 N. J. L. 302, 28 Atl. 585, 44 Am. St. 397, 23 L. R. A. 184; *Buck* v. *Paine* (1884), 75 Me. 582; *Bowman* v. *Long* (1857), 23 Ga. 242; *Stuart* v. *Walker* (1881), 72 Me. 145, 39 Am. Rep. 311; *Hooper* v. *Bradbury* (1882), 133 Mass. 303.

In *Buck* v. *Paine, supra,* the testator, Rich, devised his estate to trustees, to hold the estate in trust for the benefit of

his grandchildren. This trust was to continue three years, and then the estate was to be divided equally among the devisees. The will provided that if either of the devisees died before the trust should cease, his or her legal heirs should be substituted in place of the deceased. One of the devisees died before the period fixed for the trust to cease, having disposed of her estate by will. The question presented was, what, if anything, did her husband and others named in the will take? The supreme court of Maine held that they took nothing, and in the course of the decision said: "Here the complainant's wife took an equitable fee, and by her death during the three years named in the will, the estate went over to her heirs as an executory devise. When an estate is devised in fee, with a devise of it over upon the happening of a certain event, the first devisee takes an estate in fee simple conditional, and the devise over takes effect as an executory devise. *Fisk* v. *Keene* [1853], 35 Me. 349; 2 Redfield, Wills, 645. Roper calls the estate received by the first taker, 'an estate vesting *sub modo,* a species of conditional legacy or devise, subject to be divested on the happening of the contingency on which it is given.' 1 Roper, Legacies, *601. The words of the will clearly enough create a conditional devise only. No particular or set of technical words are necessary to create a condition. A common-sense construction of the words govern. The expressive word here, the word 'if,' is quite commonly employed to express a condition. The words 'shall be substituted' have an unmistakable meaning in their place. It would be a perversion of the common meaning of common words to deny the testator's intention to create a conditional fee. The books abound with cases that are in principle like the case at bar, showing that the happening of the subsequent condition defeats the precedent estate, although a vested estate. *Richardson* v. *Noyes* [1806], 2 Mass. 56, 3 Am. Dec. 24; *Brightman* v. *Brightman* [1868], 100 Mass. 238; 1 Roper, Legacies, *766, and

cases cited; 1 Roper, Legacies, \*601, and cases; 1 Jarman, Wills, \*848, \*864."

In *Bowman* v. *Long, supra,* a devise by codicil was made "to my grandson, William Henry Long, only surviving child of my late daughter, Lucy A. Long, the property that I gave to Lucy A. Long and her children in my will above referred to, should he live to be twenty-one years of age, but should my said grandson die before he arrives at twenty-one years of age, then said property I give to my other lawful heirs." It was held that the legacy to the grandson vested at the death of the testator, subject to being divested should he die before reaching the age of twenty-one years. See, also, *Clark* v. *Benton* (1899), 124 N. C. 200, 32 S. E. 556; *Roome* v. *Phillips* (1862), 24 N. Y. 463; 29 Am. and Eng. Ency. Law, 451, and cases cited.

As appears from the authorities cited, there is a uniform line of decisions supporting the right of a testator to dispose of property in the manner employed by Elisha King, in his will, here in controversy. It is seldom, if ever, that the same language is used in two different wills, but that employed bestows the same estate, and is subject to the same construction.

A leading case relied upon to support the conclusion of the trial court is that of *Fowler* v. *Duhme* (1896), 143 Ind. 248, in which the court held that under the language employed the estate vested in Mrs. Duhme and Moses Fowler Chase was a fee simple absolute, and therefore that case is not of controlling influence here, for this case does not belong to that class of cases.

The rule as declared in *Moore* v. *Gary* (1897), 149 Ind. 51, is, that where real estate is devised in fee simple to one, with a devise over if the first taker should die without issue living at the time of his death, the words refer to a death without issue during the lifetime of the testator, unless there is an express or implied intention to the contrary.

See, also, *Fowler* v. *Duhme, supra; Heilman* v. *Heilman, supra.* The will in this case presents no such a condition.

It is urged by the learned counsel that the provisions of the will against alienation, etc., until appellee should arrive at the age of forty years, are repugnant to our statute. §3382 Burns 1901, §2962 R. S. 1881. This statute provides that "the absolute power of aliening lands shall not be suspended by any limitation or condition whatever, contained in any grant, conveyance or devise, for a longer period than during the existence of a life or any number of lives in being at the creation of the estate conveyed, granted, devised and therein specified," etc. We do not think the will violates any provision of the statute, for it does not suspend the alienation beyond the life or "any number of lives" in being when the estate was created. When this will and the codicils were executed; appellee was in being, and when the will became operative the power of alienation was suspended for about twelve years, as the facts specially found show, at which time she would arrive at the age of forty years. No attempt is made to suspend the power of alienation beyond the life of any one in being.

The inhibition in the will against alienation is definitely fixed. One of two events was sure to occur, viz, appellee would live until she arrived at the age of forty years, or die before that period. In the latter event, if she left surviving her a child or children, the estate devised to her should go to her child or children, or if she died before arriving at the age of forty years, without issue, then to Martha E. Matlock.

As a test whether the provisions of the will are repugnant to the statute against perpetuities, it is pertinent to inquire what rights appellee's child or children would have if she should, for a valuable consideration, sell and convey, to a third party, all the real estate devised to her, and die before

arriving at the age of forty years, leaving such child or children. Under the authorities cited, there is no question but that they would be entitled to recover the estate, if they should timely assert their rights. The question now under consideration is, it seems to us, put at rest by the decisions of our own court.

In the case of *Conger* v. *Lowe* (1890), 124 Ind. 368, 9 L. R. A. 165, the testator gave to his son certain real estate during his natural life, conditioned that he live upon and occupy it, and upon his refusal to do so it was to go to his lawful heirs. He did live upon it for a time and sold and conveyed it by deed. His children brought an action to recover the property, because their father had not complied with the conditions imposed. In the decision of the case, the Supreme Court, by Mitchell, J., said: "Where, however, an estate for life, or years, is created, with a reversion to the grantor, or a valid remainder over to designated persons, conditions imposing restrictions and qualifications upon the power to alienate or use the estate are valid and maintainable upon reason and authority. Even estates in fee simple may be subjected to valued limitations over, and be made defeasible or subject to forfeiture upon condition that the grantee or devisee uses, or fails to use, the estates in a particular way, or for a particular purpose, or conveys it to a certain person, or to any person whatever, or allows it to be sold on execution, or to become encumbered, or the like. Where a precedent estate is made defeasible upon the happening of a certain event, which event also marks the taking effect in possession of a valid limitation over, the happening of that event puts an end to the precedent estate, and gives the right of possession to the person in whom the remainder or reversion is vested. The foundation of the power to restrain alienation rests upon the fact that there remains, or is vested, in some one a valid remainder or reversion, whose estate in possession is contingent upon

some event, which defeats the precedent estate, and who is entitled to take advantage of the prohibited act or use. *Harmon* v. *Brown* [1877], 58 Ind. 207; *O'Harrow* v. *Whitney* [1882], 85 Ind. 140; *Mandlebaum* v. *McDonell* [1874], 29 Mich. 78, 18 Am. Rep. 61; *De Peyster* v. *Michael* [1852], 6 N. Y. 467, 57 Am. Dec. 470."

The Supreme Court of the United States in *Nichols* v. *Eaton* (1875), 91 U. S. 716, 23 L. Ed. 254, said: "Nor do we see any reason, in the recognized nature and terms of property and its transfer by will, why a testator who gives, without pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of uninterrupted benefit of the gift, during the life of the donee. Why a parent, or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence, or incapacity for self protection, should not be permitted to do so, is not readily perceived."

In *Shimer* v. *Mann* (1885), 99 Ind. 190, 50 Am. Rep. 82, the court said: "In the devise contained in the will before us, the condition is one restraining the power of alienation until a definite and specified time. Conditions like the one written in this will are effective, for they do not unreasonably restrict the power of alienation."

In *Langdon* v. *Ingram* (1867), 28 Ind. 360, it was said: "As a general rule, a condition in a grant or devise that the grantee or devisee shall not alienate is void, because repugnant to the estate, but a condition that a grantee or devisee shall not alienate for a particular time, or to a particular person or persons, is good."

But there is another reason why the judgment must be reversed. By its decree the trial court declared that, upon the settlement of the estate of the testator, appellee 4. was entitled to receive her portion of the personal estate absolutely, without any restrictions. The

testator, by his will, created an express trust, appointed a trustee thereunder, and directed what should be done with certain of the personal estate devised to appellee. The trustee was directed to manage and control such personal estate until appellee should arrive at the age of forty years, and when that period should arrive to turn it over to her, without any restrictions. The restrictions placed upon the personal estate are not violative of any statute or rule of law. Section 8133 Burns 1901, §6057 R. S. 1881, provides: "No limitation or condition shall suspend the absolute ownership of personal property longer than the termination of lives in being at the time of the execution of the instrument containing such limitation or condition, or, if in a will, of lives in being at the death of the testator."

In the case of *Board, etc.,* v. *Dinwiddie* (1894), 139 Ind. 128, it was held that a permanent investment of funds, with directions to use the income for a designated purpose, did not violate the statute.

In *Dyson* v. *Repp* (1868), 29 Ind. 482, it was held that a will directing money to be put at interest, and to be paid to legatees, as they became of age, was a valid provision, and would be upheld.

The decree of the court directing that all of the personal estate devised to appellee be at once, upon the settlement of the estate, turned over to her was erroneous. These considerations lead us to the conclusion that the provisions of the will affecting the rights of appellee are not at variance with any rule of law, and, as they clearly express the testator's intention, it is the duty of the court to see that they are given effect.

The judgment is reversed, and the court below is directed to restate its conclusions of law, in harmony with this opinion, and render judgment accordingly.

COMSTOCK, C. J.—I concur in the conclusion reached, but am of the opinion that the estate devised to Mellie E. Lock is a determinable fee.

ROBY, J.—"A conditional fee is one which restrains the fee to some particular heir to the exclusion of others." 2 Blackstone's Comm. (Cooley's ed.), *110; 4 Kent's Comm. (14th ed.), *11.

The estate devised to Mellie Lock was a fee. It may be of perpetual duration. 1 Washburn, Real Prop. (6th ed.), §162. It is liable to be determined by an event expressed in the instrument creating it, and is therefore a determinable fee. 1 Washburn, Real Prop. (6th ed.), §§164-172; 2 Blackstone's Comm. (Cooley's ed.), *109; 4 Kent's Comm. (14th ed.), *9; *Pulse* v. *Osborn* (1903), 30 Ind. App. 631.

The estate of Mellie Lock is subject to a conditional limitation, dependent upon her death before she arrives at the age of forty years. 1 Washburn, Real Prop. (6th ed.), §165.

I do not understand that the statute against perpetuities (§3382 Burns 1901, §2962 R. S. 1881) is applicable to the provisions of this will. I therefore concur in the reversal of the judgment, placing my concurrence exclusively upon the propositions above stated.