This is an appeal from a summary judgment, rendered in a declaratory judgment action, in which certain conditions annexed to a devise of real property were held void.
Wynell McCreary and Wilson Ashley McCreary were married from 1946 until their divorce on March 24, 1975. Two children were born during their marriage, namely, Lynn Ashley McCreary, a son, and Mary Elizabeth M. Turner, a daughter.
On November 5, 1977, Wilson died testate. His will was admitted to probate in Conecuh County, Alabama, with his daughter Mary serving as administratrix. The disputed section of the will provided as follows:
 "I will and devise unto my two children, Lynn Ashley McCreary and Mary Elizabeth McCreary Abbott [now Mary Elizabeth M. Turner], jointly, share and share alike equally, all of my real estate owned by me at the time of my death, or to which I may be entitled, absolutely and in fee simple. TO HAVE AND TO HOLD unto my said two children, jointly, share and share alike, equally, absolutely and in fee simple, forever.
 "PROVIDED, HOWEVER, that the above devise is made subject to the following conditions: If at any time after my death my said two children, or either of them, should attempt to convey any part of my said lands to their mother (my ex-wife), or should they, or either of them, allow to her the right of possession or use or benefit of said lands, or any part thereof, then and in any of said events, the devise herein made to said *Page 105 
child or children shall be and become void, and the interest herein devised unto said child or children shall vest in my two sisters, Carolyn McCreary Pritchett and Wilsie McCreary Gillespie, jointly, share and share alike, absolutely and in fee simple."
On April 23, 1979, Lynn McCreary died intestate, leaving as his only heirs at law his mother, Wynell, and his sister, Mary, who was also appointed as administratrix of his estate.
On November 6, 1979, an action for declaratory judgment was filed on behalf of both Mary, as administratrix of the estates of her father and brother, and Wynell, individually, against Wilson's sisters, Carolyn McCreary Pritchett and Wilsie McCreary Gillespie. The plaintiffs sought a determination of the rights of the parties under the second section of Wilson's will. The complaint stated that:
 "5. A juticiable [sic] controversy exist [sic] between the parties in that the defendants are purported to claim an interest in the estate of Lynn Ashley McCreary by virtue of the provision of the will of Wilson Ashley McCreary providing for divestiture of title. As Lynn Ashley McCreary died intestate, with his only heirs at law being his sister, Elizabeth M. Turner, and his mother, Wynell McCreary, [the latter] would be entitled to an undivided one half interest in the estate of Lynn Ashley McCreary, and as such would be entitled to an undivided one fourth interest in the estate of Wilson Ashley McCreary under the laws of descent and distribution of the State of Alabama. However, because of the said provision referred to in said will the plaintiff Elizabeth M. Turner, as representative of the estate of Wilson Ashley McCreary and Lynn Ashley McCreary, is unable to ascertain how to disburse any settlements from the estates of Wilson Ashley McCreary and Lynn Ashley McCreary. Also, because of the provision referred to above in said will, there is a cloud on the title to the real estate owned by Wilson Ashley McCreary at the time of his death, and Elizabeth M. Turner is unable to sell or mortgage said property, as an individual or as the representative of said estates, because of the cloud on the title to said property."
Motions for summary judgment were filed by both the plaintiffs and defendants. The trial court granted the plaintiffs' motion, finding that the second paragraph of the second section of Wilson's will (hereinafter referred to as the divesting provision) was void as a matter of law.
We quote in part from the trial court's judgment:
 "8. The plaintiffs contend that said provision is invalid as being an absolute restraint on alienation. This Court agrees with this contention of the plaintiffs. Should this provision be held valid, no one could purchase said property or take a mortgage on said property from Mary Elizabeth M. Turner or Wynell McCreary with the certain knowledge that the provision had not been breached. With the provision in effect, the title to said lands is completely unmarketable because the title to the property would be unsettled for as long as Wynell McCreary lived. If the provision is valid, no judicial action could ever finally settle the title as this case, if tried on the present facts, would not be res judicata as to any later acts which the defendants might claim breached the will. The law in Alabama is that once a fee simple estate has been devised, an absolute restraint on the power of alienation is void as against public policy. Libby v. Winston, 207 Ala. 681, 93 So. 631 (1922). Because of the said provision, no intending purchaser or mortgagee from Mrs. Turner or Mrs. McCreary could know with certainty that the provision had not been breached in some manner or would [not] subsequently be breached in some manner, thus preventing said intending purchaser or mortgagee from receiving a good and valid fee simple title. Therefore, the said provision must be held null and void. This Court has found no Alabama cases on this point, but the Minnesota case of Morse v. *Page 106 Blood, 68 Minn. 442, 71 N.W. 682 (1892) concerned a provision in a will that was very similar to the provision in the McCreary will. The testator in the Minnesota case provided that the devisee should `in no case give or bequeath one cent of said estate to any member of my family, or to any relation of her own'. In Morse, the Court held as follows:
 "`If the condition is good, any purchaser from plaintiff [of any] parcel takes it at the peril of subsequent forfeiture by any act done by plaintiff after the purchase amounting to a breach of the condition. Thus, plaintiff might give one of her relatives or one of the testator's family a meal of victuals out of the property left to her by her deceased husband, and it would forfeit the whole estate so devised to her, as well as that part of it which she had conveyed away to strangers as that part which she still held.'
 "Should Mary Elizabeth M. Turner convey to a stranger her interest in all of the land with the exception of one acre, and subsequent to that conveyance she conveyed to her mother the one remaining acre, or allowed to her the right of possession or use or benefit of the one acre, then the conveyance to the stranger would fail if the provision is valid. This would be so even though there had been no breach of the provision at the time of the conveyance to the stranger. The Court further finds that this restraint clause of the will could be interpreted in such a manner that, if Lynn A. McCreary had, during his lifetime, and in spite of the strenuous objection of his sister, Mary Elizabeth M. Turner, conveyed one acre of said lands to his mother and placed her in possession of same, such action on his part would have divested him and his protesting sister of this inheritance as well and voided and/or forfeited all prior conveyances by either of them to strangers. Therefore, the Court finds that these provisions of said will create an absolute restraint of alienation.
 "9. This Court further finds that the provision providing for forfeiture is null and void because of vagueness and uncertainty. The acts that would constitute `the right of possession or use or benefit of said lands' are uncertain. This phrase has no definite legal construction or interpretation and can mean many things to many people. Title to real estate should not be subject to forfeiture on such uncertain, indefinite and vague conditions.
 "WHEREFORE, the premises considered, it is ORDERED and ADJUDGED as follows:
 "1. That the second paragraph of paragraph SECOND of the Last Will and Testament of Wilson Ashley McCreary, deceased, dated April 8, 1975, is held to be null and void and of no effect, and any interest present, future, contingent or otherwise allegedly created by said paragraph SECOND in said will in favor of Carolyn McCreary Pritchett or Wilsie McCreary Gillespie is likewise cancelled and held for naught.
 "2. That Lynn Ashley McCreary and Mary Elizabeth McCreary Abbott took title to all real estate, owned by Wilson Ashley McCreary at the time of his death, or to which he was entitled, in fee simple absolute, without restriction upon said fee simple estate.
 "3. That Wynell McCreary and Mary Elizabeth M. Turner inherited an undivided one-half (1/2) interest each in the estate of Lynn Ashley McCreary, deceased, according to the laws of descent and distribution in effect in Alabama at the time of his death. . . ."
We initially find that the trial court improperly designated the divesting provision as an "absolute" restraint on alienation. We associate the modifier "absolute" with a provision which, without qualification, undertakes to deny the devisee of a legal estate in fee simple the power to alienate his acquired estate, or which, without qualification, undertakes to render such an estate forfeitable on any attempted alienation. See, 6 R. Powell and P. Rohan, The Law ofReal Property, §§ 839, 840 (1981). *Page 107 
The divesting provision is qualified so that it does not completely prohibit the legal power to alienate. Only the mother, Wynell, is excluded as a permissible alienee: "If at any time after my death my said two children, or either of them, should attempt to convey any part of my said lands to their mother (my ex-wife). . . ." In addition, the divesting provision poses prohibitions against the mother's possession and use of the land which only incidentally restrain alienation. We conclude that these portions of the divesting provision created respectively a "direct" and an "indirect" restraint on alienation.
 "A direct restraint on alienation is a provision in a deed, will, contract or other instrument which, by its express terms, or by implication of fact, purports to prohibit or penalize the exercise of the power of alienation. . . . An indirect restraint on alienation, arises when an attempt is made to accomplish some purpose other than the restraint of alienability, but with the incidental result that the instrument, if valid, would restrain practical alienability. Indirect restraints on alienation arise on the creation of future interests and of trusts."
L. Simes and A. Smith, The Law of Future Interests, § 1112 (2d ed. 1956) (hereinafter cited as Simes).
The direct restraint herein is the type which purports to penalize the exercise of the power of alienation. Qualified so as to only prohibit alienation to the mother, this restraint was exerted in the form of an estate in fee simple defeasible with an executory limitation. Should the children attempt to alienate to their mother, an executory interest held by Wilson's sisters will vest in derogation of the estate devised to said child or children.
 "Alabama has long recognized the existence and viability of the estate in fee simple defeasible. McRee's Adm'rs v. Means, 34 Ala. 349 (1859); Flinn v. Davis, 18 Ala. 132 (1850). It has been defined as `"an estate in fee simple which is subject to a special limitation, a condition subsequent, an executory limitation, or a combination of such restrictions.'" Brashier v. Burkett, 350 So.2d 309, 313 (Ala. 1977). Restatement, Property, § 16. An executory interest or limitation is a nonvested interest in a transferee which is so limited that it will vest on the happening of a condition . . . or on the occurrence of an event which is certain to take place, and which vests in derogation of a vested interest. Simes, Handbook of the Law of Future Interests, § 12, p. 25 (2d ed. 1966). It has also been defined as any future interest which is created in a person other than the transferor [and which] is not a remainder. Bergin and Haskell, Preface to Estates in Land and Future Interests, Ch. 3, p. 83 (1966).
 "Such interests are denominated executory interests rather than contingent remainders because there can be no contingent remainders after a fee simple. Simes on Future Interests, supra, § 12."
Bradley v. Eskridge, 361 So.2d 100, 101 (Ala. 1978).
The indirect restraint on alienation arose out of Wilson's attempt to discourage his children from allowing their mother to possess, use, or benefit from the devised lands. Again, the fee simple defeasible with an executory interest was the device employed: ". . . should they, or either of them, allow to her the right of possession or use or benefit of said lands, or any part thereof . . . the devise . . . shall be and become void, and the interest . . . shall vest in my two sisters. . . ." Undoubtedly, this provision was not aimed at restraining the childrens' ability to alienate. In practice, however, few persons would be interested in buying or taking a mortgage on the land without first obtaining a conveyance of the future interest held by Wilson's sisters. Alienability is indirectly restrained because the possibility of forfeiture impairs the marketability of the property.
Having so classified these restraints on alienation, we turn now to the trial court's decision that the restraints rendered the divesting provision void. Simes, at § 1148, addresses generally the type of direct restraint involved here: *Page 108 
 "A condition subsequent, special limitation, or executory limitation to the effect that a fee simple shall be forfeited or shall terminate on alienation is generally held void. This would appear to be true though the condition or limitation is attached to an otherwise defeasible fee simple. Here, however, we find a somewhat stronger minority view than in the case of directions not to alienate the fee. An Alabama decision sustains a condition subsequent to the effect that conveyance was permissible only with the consent of the grantors or their legal representatives." (Emphasis added; footnotes omitted.)
The Alabama decision cited in Simes is Libby v. Winston,207 Ala. 681, 93 So. 631 (1922). In Libby, this Court sustained a direct restraint on alienation because it was attempted by means of a defeasible estate.
Desiring to keep with the rationale of Libby, supra, and authorities cited therein, we hold that the direct restraint upon the childrens' power to alienate to their mother was "validly interposed" by means of a defeasible estate. We quote from Libby, supra, 207 Ala. at 683-84, 93 So. 631, as follows:
 "The rule — stated in Hill v. Gray, 160 Ala. 273, 276, 49 So. 676, and in Graves v. Wheeler, 180 Ala. 412, 416, 61 So. 341 — which pronounces void clauses in deeds or devises in absolute, not partial, restraint of the power of alienation of land conveyed or devised, is predicated of a grant or devise in fee simple. The essence of the stated rule is that the attempted restraint upon the power of alienation is inconsistent with the grant, the power to sell or lease being an inseparable incident of an estate in unqualified fee; and to allow such restraint would offend public policy. Mandlebaum v. McDonell, 29 Mich. 78, 18 Am.Rep. 61, 73, et seq., contains a discriminative and instructive treatment of the subject.[1] . . .
 The application of the rule to the instrument under consideration depends upon its character as a conveyance. If it is not a grant in fee, the rule of Hill v. Gray, supra, is inapplicable. The conclusion upon this question turns, of course, upon the character of the grant, the instrument's construction and its effect in that aspect. . . . [Emphasis added.]
 "This grantor, Winston, through the use of the phrase, in the granting clause `hath upon the conditions hereinafter mentioned,' and through the further confirmatory phrase, as expressive of the grantee's convenant and agreement, that `this sale and conveyance shall hold good and valid only upon the compliance by the grantee and `her lawful representatives with the following conditions' conveyed to the grantee a conditional fee only, a defeasible estate, subject to divestiture upon breach of conditions. Carter v. Chaudron, 21 Ala. 72, 89, 90; Hitt Lbr. Co. v. Cullman Coal Co., 200 Ala. 415, 416, 417, 76 So. 347. The grantor's intent to convey a defeasible estate only is clear and unequivocal. His language leaves no doubt of his purpose in that respect. . . .
 "Consistent with the observations of Christiancy, J., in Mandlebaum v. McDonell, 29 Mich. 78, 88, 18 Am.Rep. 61, 68, that many restrictions or qualifications upon the rights of devisees or grantees may be validly interposed `by making the estate itself dependent upon such condition,' the annotation to Latimer v. Waddell,[2] 3 L.R.A. (N.S.) pp. 676, 677, contains many illustrations of this means by which offense to the rule against suspension of the power of alienation has been held to be avoided. . . .
 "The instrument not being a grant in unqualified fee, but a grant of an estate defeasible upon breach of condition subsequent defined therein, the condition in restraint of alienation is not offensive to *Page 109 
the rule against the suspension of the power of alienation stated in Hill v. Gray, 160 Ala. 273, 276, 49 So. 676. . . ."
Beginning with an excerpt from Mandlebaum v. McDonell, supra, we quote from the annotation to Latimer v. Waddell, 3 L.R.A. (N.S.) 676:
 "`Nor does the question involve an inquiry how far a somewhat similar object might have been accomplished by making this estate in fee in these devisees defeasible, upon the condition of their executing, before a certain period, a conveyance, . . . the property being limited over to another, or to be forfeited and revert on breach of the condition. In these cases there would be some party besides these devisees interested in the observance of the condition, with a right to take advantage of the breach, viz., the heirs of the devisor or the person to whom the property was limited over. It is quite possible that many restrictions or qualifications upon the right of devisees or grantees may be made effectual by making the estate itself dependent upon such condition, to which it could not be subjected if the estate given is absolute.' . . . [Emphasis added.]
 "It is said, arguendo, in Congor [Conger] v. Lowe, 124 Ind. 368, 9 L.R.A. 165, 24 N.E. 889, that even estates in fee simple may be subjected to valid limitations over, upon condition that the grantee or devisee convey it; that the foundation of the power to restrain alienation rests upon the fact that there remains, or is vested, in someone, a valid remainder or reversion, who is entitled to take advantage of the prohibited act.
 "After a review of analogous English decisions, the court, in Fawlkes [Fowlkes] v. Wagoner (Tenn.Ch.App.) 46 S.W. 586, draws from them the following conclusion: That, in order to make a restriction upon alienation, even for a limited time, good, there must be a provision for the cessor of the estate upon violation of the restricting clause; and that this may be done by annexing a clause that, upon breach of the condition restraining alienation, the grantor or his heirs at law may enter, or that the estate will cease, which is another form of the same thing; and that, in default of this appearing clearly, the restriction will be void for repugnancy.
 "Then, after reviewing a number of the leading American decisions, the same court, in the same case, declares that the conflict among the American cases is more in terms than in substance; that the vital point in all of them is that, in order to make the provision undertaking to create a partial restraint upon alienation legal, there must be, in some form, a provision for cessor upon violation of the restraining clause; that this may be done either by a condition annexed to the estate, or by a conditional limitation; that, under the form of a condition annexed, or breach thereof the grantor or his heirs may enter; that, under the form of a conditional limitation, the same result may occur, or the estate may go over according to the terms of the limitation; and that the confusion in the American authorities has arisen from a failure to note the two forms in which the restriction may appear.[3] . . . [Emphasis added.]
 "A clause restraining a devisee from selling the lands devised before she became forty years of age, and giving a remainder over in case of her death under forty, was upheld upon the ground that a conditional fee was thereby created, in Matlock v. Lock (Ind.App.) [38 Ind. App. 281] 73 N.E. 171.
 "It is fully admitted in Anderson v. Cary, 36 Ohio St. 506, 38 Am.Rep. 602, that a grantor may restrain or limit the enjoyment of land granted by trusts, conditions, or covenants, or transfer an estate therein, less than the whole; but the court makes a distinction between such conveyances and an attempt to convey a *Page 110 
fee simple and then take from it its inherent alienable quality by a clause restraining its alienation for a limited period."
We note that Simes, at § 1151, goes on to specifically discuss the type of direct restraint created here:
 "It is uncertain what the courts would hold if the condition were against alienation to one named person. It may be said that in some cases the courts do apparently discriminate as to the degree of restraint of alienability, and that to restrict alienation only as to a small class of persons does not affect the marketability of property greatly. Doubtless that is true. But the great difficulty would be to know where to draw the line. If a condition against alienation to a single person is permissible, then why not allow it as to two persons, or a dozen persons, or as to all the members of a given race? And, if that were permitted, it would be but a step farther to recognize a condition restraining alienation as to a class consisting of all members of the human race except X. Obviously, this last would be bad. Yet if the line be drawn at any intermediate point, it would seem to be more or less arbitrary." (Footnote omitted.)
Taking heed of this observation, we will rely upon the authorities cited above and forego any attempt at conditioning the validity of the direct restraint upon the fact that only Wynell McCreary was excluded as a permissible alienee.
As for the indirect restraint on alienation arising from this defeasible estate, the rule against perpetuities serves as the restricting rule.
 "Although the rules relating to direct and indirect restraints have a common objective — to keep land freely alienable — they do not work in quite the same way. Indirect restraints are curbed by the rule against perpetuities and rules analogous thereto. In general, this rule lays down a period within which an interest must vest in order to be valid. Since it is the creation of the future interests which gives rise to the inalienability, the total remedy would be to prevent all future interests. Such a remedy, however, is too drastic and would eliminate the freedom of disposition now possible. The rule is thus a partial remedy, preventing only the creation of interests which are too remote, and thus tolerating some degree of practical inalienability arising from the existence of valid future interests. . . .
 "American law appears to single out two types of indirect restrainst for special regulation: That which is involved in the contingent or executory future interest and that which is involved in the indestructible private trust. At least in so far as the future interest is concerned, the restricting rule is everywhere known as the rule against perpetuities. And whether the indestructible trust or the future interest is involved, the restraint would appear to be void unless it is certain to be removed within a life or lives in being and twenty-one years beyond."
Simes, at §§ 1116, 1202 (footnotes omitted; emphasis added).
In this case, however, we need not consider whether the indirect restraint will be removed within the period specified by the rule against perpetuities. We find that the wording of the conditions which indirectly restrain alienation — forfeiture of ownership should the children allow to their mother "the right of possession or use or benefit" of the land — is too vague to be enforced.
Perhaps the trial court said it best: "the acts that would constitute `the right of possession or use or benefit of said lands' are uncertain. This phrase has no definite legal construction or interpretation and can mean many things to many people." The rule is settled that an estate in fee simple cannot be made defeasible upon such vague and uncertain conditions.
 "Where the estate or interest is created in one clause of a will in clear and decisive terms, that interest cannot be taken away or diminished by
raising a doubt upon the extent and meaning of subsequent clauses, nor by inference therefrom, nor by any subsequent words that *Page 111 are not as clear and decisive as the words of the clause giving the interest or estate. Austin v. Pepperman, 278 Ala. 551, 179 So.2d 299 (1965); Sewell v. Byars, 271 Ala. 148, 122 So.2d 398 (1960)."
Bradley v. Eskridge, supra, at 102. (Emphasis added.)
Arguably, the other condition within the divesting provision — forfeiture of ownership should the children "attempt to convey" to their mother — is also uncertain. Conceivably, activity which is only preliminary to an actual conveyance of title (negotiation, making an offer, contacting an attorney, etc.) could be construed as an "attempt." Our view is that "attempt to convey" is not indefinite in meaning. Rather, it is the language which most accurately describes an actual transfer of title. Under the operation of the divesting provision, any conveyance of title by the children to their mother would be ineffective. Such a transfer could never be more than an "attempt."
In conclusion, then, we hold that the divesting provision does not improperly restrain alienation. At the same time, we hold that the wording of the provision is vague and unenforceable insofar as the condition against the mother's "right of possession or use or benefit."
The remaining condition — that the children not convey to their mother — is definite and enforceable, but has not yet occurred. The sisters claim that this condition has been fulfilled because the son attempted to convey the property to his mother by dying intestate. The trial court adequately answered this contention as a matter of law: "As Lynn A. McCreary has no control over his own death or over the laws of intestate succession of the State of Alabama, this Court finds no merit in such argument." They also argue that by adding her mother's name to the suit, Mary is attempting to convey the property to her. The trial court also answered this contention by stating that "The filing of a declaratory judgment action to determine these rights cannot be found to be a breach of said provision."
Upon Wilson's death, his two children each received half of an estate in fee simple defeasible in all of his real property. Because the children have never violated the condition against conveyance, the son, Lynn, died possessed of his undivided one-half interest in the land. His sister, Mary, and his mother, Wynell, then inherited equal shares of this interest under the laws of descent and distribution.
Thus, the summary judgment in favor of plaintiffs-appellees is due to be affirmed in part and reversed in part, and the cause remanded.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
FAULKNER, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., concurs in the result.
[1] In Mandlebaum, the Michigan Supreme Court held invalid a restriction upon the alienation by devisees of an absolute vested remainder in fee.
[2] In Latimer v. Waddell, 119 N.C. 370, 26 S.E. 122 (1896), the North Carolina Supreme Court held void a condition, annexed to a conveyance in fee simple, which forbade alienation for a period of five years.
[3] While the estate herein is defeasible by operation of an executory interest, rather than a condition subsequent as inLibby, supra, we find no restrictions in Libby as to the form in which the defeasible estate must appear.