THE MISSOURI PACIFIC RAILWAY COMPANY V. CHARLES LASCA, *a Minor, etc.*

No. 15,750.   (99 Pac. 616.)

SYLLABUS BY THE COURT.

1. COMPROMISE AND SETTLEMENT—*Injury to Infant—Authority of Parent—Judgment by Consent.* A parent has no implied authority to compromise or settle the claim or cause of action of his infant child or to consent that a judgment may be rendered against him.

2. ———— *Authority of Parent—Negotiations for an Adjustment.* When acting as next friend for his infant child a parent who has been regularly made a party to an action may properly negotiate for an adjustment of 'the controversy. He can not, however, bind the infant by such settlement, which can only become effective by due judicial examination and adjudication.

3. —————— *Judgment Entered without a Judicial Investigation.*
Where the proceedings in court are merely formal, and are
instituted and carried 'on only to give an apparent sanction
to the settlement, and there is no judicial investigation of the
facts upon which the right or extent of the recovery is based,
a judgment entered in pursuance of the agreement and by
consent merely is only colorable, and will be set aside in a
proper proceeding when its effect, if allowed to stand, would
be to bar the infant's substantial rights.

Error from Wyandotte court of common pleas; WILL-
IAM G. HOLT, judge. Opinion filed January 12, 1909.
Affirmed.

### STATEMENT.

THIS was an action commenced by Charles Lasca, a
minor about six years of age, by Nick Lasca, his father
and next friend, to set aside a judgment rendered Sep-
tember 9, 1901, in the same court in favor of Nick
Lasca and Anna Lasca, father and mother and next
friends of Charles Lasca, a minor, against the Missouri
Pacific Railway Company for $95 and costs.

The petition states that the defendant caused the
judgment referred to to be rendered against itself;
that there was no trial upon pleadings and proofs nor
upon the merits of the case, and that no proof was
made nor evidence offered nor damages assessed by the
court; that the proceeding was without the knowledge
or consent of Nick Lasca or Anna Lasca, and the judg-
ment was obtained for the purpose of defrauding the
plaintiff by barring the cause of action set up in the
petition therein; that the plaintiff had a good cause of
action for injuries caused by the negligence of the de-
fendant, and still has such cause of action, unless
barred by the judgment, which he asks to have set
aside accordingly. The defendant answered by a gen-
eral denial, and a plea to the jurisdiction of the court,
challenging its authority to try the cause because the
judge of the court was a material witness for the de-
fendant.

Upon the trial of these issues the court made findings

of fact, from which it appears that Nick Lasca, an Italian employee of the Missouri Pacific Railway Company, with Anna, his wife, and their little son, Charles, about eighteen months of age, were living in a bunk-car on a side-track at Lane, Kan. Another car, upon which was a water-tank, was standing near by on another side-track. Mrs. Lasca went to this water-tank for the purpose of drawing water for domestic use, leaving the little boy with his grandmother in the bunk-car. While his mother was absent on this errand the boy left the bunk-car, went to the other side-track, and put his hands on the rail near the tank-car; just at that time an incoming freight-train moved the tank-car so that a wheel passed over the boy's hands, crushing and bruising them, whereby he was very severely injured.

Negotiations were opened between the defendant's claim agent and the parents of the child, resulting in an agreement in writing whereby the parents agreed to accept $100 from the defendant in full of all claims for the injury, to be paid through a friendly suit to be instituted in a court in Wyandotte county, this sum to cover all claims of the parents as well as of Charles Lasca, and to be divided as the attorneys for the defendant might deem proper. In pursuance of this agreement the parents went to the office of the defendant's attorney in Kansas City, at the request of the claim agent, and there met the company's attorneys and Frank Pitman, another attorney who was then in the office, with whom they consulted about the matter. The petition, answer and reply in the proposed action had been prepared by the defendant's attorneys. The petition and reply were signed by Frank Pitman, as attorney for the plaintiff, the papers being entitled *"Nick Lasca and Anna Lasca, father and mother and next friends of Charles Lasca, a minor, plaintiff, v. the Missouri Pacific Railway Company, defendant."* The petition stated a cause of action for the injuries to Charles Lasca, and prayed for a judgment for $100.

The answer contained a general denial, and a plea of contributory negligence, and was signed by the defendant's attorneys. Nick Lasca and Anna Lasca and the attorneys named then proceeded to the court of common pleas in Wyandotte county, filed the papers and presented them to the court, and the attorney for the defendant informed the court that this was a friendly suit for the settlement of the claim against the company, and that he wished to have a judgment entered against the company in accordance with the settlement for $95 and costs. The judge, the court being regularly in session, then called Nick Lasca and Anna Lasca and inquired of them whether the settlement was satisfactory. They stated that it was and that they desired to have judgment entered accordingly. The judge informed them that if a judgment was entered it would cut off all claims of the child for further damages, and thereupon judgment was entered for $95 and costs by consent of the parties. There was no trial of the issues and no evidence was introduced, except the statement of the parties present to the effect that the child had been injured by the defendant company, that the parents had effected a compromise and settlement, and that the amount agreed upon was satisfactory. The judge made an entry upon his trial docket as follows: "September 9, 1901, judgment for plaintiff for $95 and costs, by consent and agreement of all parties." Thereupon a judgment was entered upon the journal of the court in ordinary form, reciting as follows:

"And thereupon, said case came on for trial on its merits, all parties appearing as before, and the jury being waived and a trial being had before the court, on the pleadings and proof, and the court being fully informed and advised, doth find the issues in favor of the said plaintiff and against the said defendant, and further finds that the said Charles Lasca had been damaged in the sum of $95."

Immediately after this judgment was entered, and on the same day, September 9, 1901, the defendant paid

to Nick Lasca and Anna Lasca $105.65, taking from them a receipt reciting the injury to the child, the settlement referred to, and containing the following:

"On the 9th day of September, 1901, the said suit was up for hearing and the said railway company, while denying liability on account of said accident, but for the purpose of making an end to the matter, and closing it up by friendly suit, confessed judgment by agreement with the plaintiffs and their attorney, for $95 and costs of suit, taxed at $5.65. . . . In consideration for the prompt payment of the judgment above referred to, and the further payment of $5, as recited above, we, Charles Lasca, a minor, by Nick Lasca and Anna Lasca, father and mother, and next friends, and Nick Lasca and Anna Lasca in their own behalf, jointly and severally, fully and forever release, discharge and acquit the said Missouri Pacific Railway Company of and from all actions, causes of action, suits, claims and demands of every class and character arising out of, and accruing from, the injuries sustained by the claimants herein."

They also receipted the journal docket.

In addition to other findings, the substance of which has just been stated, the court found:

·"That Nick Lasca and Anna Lasca were fully informed as to all the facts surrounding the injury to their child, and also all the facts concerning the settlement and the proceedings in court at the time of the taking of the judgment, and no fraud in fact was committed against said Nick Lasca, Anna Lasca or Charles Lasca by any representative of the defendant railway company."

Judgment was rendered setting aside the former judgment of September 9, 1901, and the defendant presents the case here for review.

*James S. Gibson, James W. Orr,* and *B. P. Waggener,* for plaintiff in error.

*William B. Sutton, William B. Sutton, jr.,* and *Elmer N. Powell,* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: The preliminary agreement, the entry on the judge's minutes, the satisfaction of the judgment and the findings of fact all show that the former judgment was entered by consent only. The court upon inquiry learned that the boy had been injured by the defendant company, and that the parents had agreed for their son to accept $100 in full satisfaction for the injury. There was no judicial examination concerning the facts or the extent of the injury. It was, as the agreement recited that it should be, a "friendly suit," designed merely to give efficacy to an agreement which without judicial sanction would have been invalid. The pleadings were all prepared by the defendant's attorney, and the same attorney requested that judgment be entered in accordance with the settlement, which was done.

A parent has no implied authority to compromise or settle a minor's cause of action. (*P., C., C. & St. L. Ry. Co. v. Haley,* 170 Ill. 610, 48 N. E. 920; *Fletcher v. Parker,* 53 W. Va. 422, 44 S. E. 422, 97 Am. St. Rep. 991 and note.) Nor has a parent authority to consent that a judgment be rendered against his infant child, and when admitted to prosecute or defend as a next friend or guardian *ad litem* he can not by admissions or stipulations surrender the substantial rights of the infant. (*Kingsbury v. Buckner,* 134 U. S. 650, 10 Sup. Ct. 638, 33 L. Ed. 1047; *Collins v. Trotter,* 81 Mo. 275; 22 Cyc. 663.) The next friend, being entrusted with the rights of the infant so far as they are involved in the cause, and acting under responsibility to the court and to the infant, may negotiate for a fair adjustment of the controversy. (*Walsh v. Walsh,* 116 Mass. 377, 17 Am. Rep. 162.) He may not, however, bind the infant by such settlement; it can only become effective when given due judicial sanction (*Tripp v. Gifford,* 155 Mass. 108, 29 N. E. 208, 31 Am. St. Rep. 530), and this

must be upon a real and not a perfunctory hearing. The attempted compromise does not become effective by the consent of the next friend, but by the judgment of the court, acting upon the facts judicially ascertained. The supreme court of Alabama stated the rule governing an attempted compromise by a next friend and judgment entered by consent thereon in the following language:

"And being without power to compromise the cause of action, and the court having the power and being charged with the duty of controlling the suit to the protection of the infant's interest, an attempted compromise can not have force and validity injected into it by his mere consent to a judgment for the amount he has assumed to agree to receive in settlement of the cause of action. His mere consent is nugatory. It is as if it were not and had never been. The court may upon being advised of the facts, upon hearing the evidence, enter up a valid and binding judgment for the amount so attempted to be agreed upon, but this not because of the agreement at all—that should exert no influence —but because it appears from the evidence that the amount is just and fair, and a judgment therefor will be conservative of the minor's interests." (*Tennessee Coal, Iron & Railroad Co. v. Hayes*, 97 Ala. 201, 209, 12 South. 98.)

In a case in Virginia a decree entered by consent in an equitable action for the sale of an infant's property was set aside in a suit brought for that purpose. The court said:

"For want of discretion, the infant defendants were not competent to consent, and no one could consent for them. They could select no attorney, and a guardian *ad litem* to defend the infants could not consent away their rights and their inheritance. *Ewing v. Ferguson*, 33 Gratt. 563. 'No such consent could be given on the part of the infant heirs, and their rights and interests were under the protection of the court.' *Cralle v. Meem*, 8 Gratt. 530. 'It can not be used against them, as having been made by their guardian *ad litem;* for no rule is better settled than that an answer of an infant by guardian can not be read against him at all, for any purpose.' *Bank of Alexandria v. Patton*, 1 Rob.

535. 'An infant is never to be prejudiced by an act, default, or admission of his guardian *ad litem.*' Minor Inst. vol. I. 520, 521. 'Whatever admissions there may be, or whatever points may be tendered thereby in issue, the plaintiff is not in any degree exonerated from his duty in proving, as against the infant, the whole case upon which he relies.' 1 Daniel Ch. Pr. 169, and notes." (*Daingerfield and al. v. Smith and others,* 83 Va. 81, 90, 1 S. E. 599.)

In North Carolina it was said:

"But it may be taken to be the law that, in a case where issues are joined between infants on one side and the adverse party, and no evidence is introduced, and nothing is done or said on the trial except that an agreement is entered into by the next friend or counsel of the infants, that the verdict shall be entered against the infants, the verdict and judgment will not bind the infants. In such a case the court would have no knowledge of the facts, and therefore could not exercise any supervision over the interest of the infants. The object in having a next friend appointed for infants is to have their rights and interests claimed and protected, and the next friend or their counsel will not be permitted to yield their rights to others by a consent verdict and judgment where the court has exercised no supervision over the arrangements." (*Ferrell v. Broadway,* 126 N. C. 258, 261, 35 S. E. 467.)

This decision was overruled by a divided court upon a subsequent hearing (127 N. C. 404, 37 S. E. 504), for reasons which do not affect the principle stated in the above quotation.

While in this case the court did exercise some supervision over the agreement it did not judicially examine the facts to determine whether the agreement was reasonable and proper. The court merely approved what the next friend had done, not because it found that it was for the best interests of the infant, but because the consent of the parents had been given and they were still satisfied. The duty of the court, stated in many decisions, and referred to in the recent case of *Crapster v. Taylor,* 74 Kan. 771, 87 Pac. 1138, to protect the in-

terests of infants was not performed by inquiring of the parents if they were satisfied with the agreement. It may be that some of the cases above cited have carried the doctrine to an extreme limit. The next friend must not be denied such necessary incidental powers as will facilitate the fair adjudication of the infant's rights. This is necessary to their proper vindication, both in prosecution and defense. Where a compromise is fairly incidental to an action regularly brought, and is upon due judicial examination approved, the judgment if not otherwise impeached may be conclusive, as in the case of adults; but where the proceedings in court are merely formal and instituted and carried on only to give an apparent sanction to the agreement, and there is no judicial investigation of the facts upon which the right or extent of the recovery is based, the judgment so entered by consent is only colorable, and must be set aside in a proper proceeding when its effect, if allowed to stand, would be to bar the infant's rights. In such a case the proceeding in court should be regarded "as but formal and as intended solely to employ the functions and powers of the court to give validity to the prior agreement." (*P., C., C. & St. L. Ry. Co. v. Haley,* 170 Ill. 610, 613, 48 N. E. 920. See, also, *Long et al. v. Mulford et al.* 17 Ohio St. 484, 93 Am. Dec. 638; *Waterman v. Lawrence,* 19 Cal. 210, 79 Am. Dec. 212; *Kromer v. Friday,* 10 Wash. 621, 39 Pac. 229, 32 L. R. A. 671 and note; *Gooch v. Green,* 102 Ill. 507; *Ralston v. Lahee,* 8 Iowa, 17, 74 Am. Dec. 208.)

The conclusion of the trial court that no fraud in fact was committed in this transaction can not affect the right of the infant to relief. The judgment set aside would have been an absolute bar to the prosecution of his claim, and thus he would have been deprived of his legal rights without authority. The motive of the actors does not avoid the consequences of the act. The parents had no power to consent to the judgment; having no other sanction, it can not stand.

The defendant moved for a change of venue upon the ground that the judge was a material witness, having personal knowledge of the facts concerning the entry of judgment, and pleaded the same matter in the answer. That the judge did have such knowledge must be conceded, but as a general rule a judgment can only be vacated in the court in which it was rendered. (17 A. & E. Encycl. of L. 842.) To that court and to no other should such an application be made. (1 Black, Judg. § 297.) The action was in the proper tribunal, and it is not perceived how the personal knowledge of the judge of the former proceedings before him should be a disqualification. Besides, it is not claimed that the proceedings were otherwise than as stated in the findings.

The judgment is affirmed.