## FUEHRING *v.* THE UNION TRUST COMPANY OF INDIANAPOLIS, ETC., ET AL.

[No. 17,493 in the Appellate Court. Petition to transfer to Supreme Court denied February 25, 1947. Dissenting opinion filed June 23, 1947.]

*Barney & Hughes*, of Indianapolis, for appellant.

*Davis, Baltzell, Hartsock & Dongus*, of Indianapolis, for appellee.

## DISSENTING OPINION ON PETITION TO TRANSFER

EMMERT, J.—This case comes up for the consideration of this court on a petition to transfer from the Appellate Court. See (1946), 117 Ind. App. 246, 69 N. E. (2d) 141. The transfer was denied by a majority

action of this court without opinion, but an opinion denying the transfer would have been proper. *Hunter* v. *Cleveland, etc., R. Co.* (1930), 202 Ind. 328, 174 N. E. 287; *Myers* v. *Newcomer* (1930), 202 Ind. 335, 174 N. E. 290.

Therefore a dissenting opinion is proper, and in view of the most important principles involved in the protection of the property rights of infants as presented by this record, choked with error from the time the original action was instituted to construe the last will of testator and through the proceedings to review the judgment of the Marion Probate Court thereon, the writer would be derelict in his duties if the dangerous precedents therein established remain unchallenged.

The testator, William H. Fuehring, died a resident of Marion County, Indiana, June 10, 1934, leaving surviving him his widow, Louise Fuehring, his son, John H. Fuehring who had two children, William Fuehring and Ethel Christine Fuehring, and two daughters, Clara Fuehring, and Lillie Leonard who died intestate January 31, 1935, leaving surviving her as her only heir at law one Carl Fuehring. This will was admitted to probate in the Marion Probate Court June 11, 1934.

The material parts of Item IV of said last will of William H. Fuehring, deceased, provided in part as follows:

"ITEM IV. I hereby give, devise, and bequeath unto The Union Trust Company of Indianapolis, in trust only, all the rest, residue and remainder of my estate, real, personal and mixed, of every kind and character, and wheresoever the same may be situated, and of which I die seized or possessed, the same to be held by said trustee, in trust only, for the following uses and purposes, to wit:

". . .

"(b) Said Trustee monthly, shall pay and apply to and for the use and benefit of my son, John H.

Fuehring, for a period of fifteen years following my death, the entire net income of one-third of said trust fund, and after said fifteen year period shall elapse, said trust, as to my said son John Fuehring shall terminate, and said Trustee shall pay and distribute said share to my said son, *and in the event of the death of my said son,* either before or, after my death, but prior to the aforesaid distribution, said Trustee shall hold and apply his share of said trust estate for the use and benefit of his child or children *until the youngest of his children who may be living at the time of my death,* shall arrive at the age of thirty-five years, *at which time said trust shall terminate* and said trustee shall pay and distribute said share unto the descendants of said John H. Fuehring, in equal portions, share and share alike.

"(c) Said Trustee shall also monthly pay and apply to and for the use and benefit of.my daughter, Lillie Leonard, during her lifetime, the entire net income of one-third of said trust fund, and upon the death of said Lillie Leonard, either before or after my death, said Trustee shall hold and apply her one-third thereof for the use and benefit of her son Carl Fuehring, *during his lifetime,* and *upon the death of said Carl Fuehring, said trust shall terminate* and said Trustee shall pay and distribute said one-third of said trust fund unto those who would be my heirs at law, according to the law of descent of the State of Indiana, at the time. of the death of said Carl Fuehring.

"(d) Said Trustee shall monthly pay and apply to and for the use and benefit of my daughter Clara Fuehring, during her entire lifetime, the entire net income from one-third of said trust fund, and upon the death of said Clara Fuehring, the one-third of said trust fund so set aside for her use and benefit, shall revert to and become a part of said trust estate, and thereafter said trust fund shall be divided into two equal parts instead of three, and thereupon said Trustee shall use one-half of said trust fund for the use and benefit of my said son John Fuehring, and his child or children, and the remaining one-half thereof for the use and benefit of my said daughter Lillie Leonard,

and her son Carl Fuehring, *under the same conditions as are set forth in Clause B. and C. of item four of this will.*

"(e) Each and every payment, right and interest granted to the beneficiaries of this trust is subject to the condition, however, that it shall not be assigned nor encumbered by such beneficiary, nor levied upon, attached or garnished by any creditor of either of them, and in the event of any such assignment, encumbrance or levy, such payment, right or interest shall be held and applied by said Trustee, on the terms above provided, to and for the use and benefit of the wife, husband, and children of such beneficiary, and if none, then paid to the person with whom said beneficiary resides upon such terms as said Trustee may deem best in its judgment and discretion." (Italics supplied.)

By an agreement dated January 9, 1925, between William H. Fuehring, the testator, and his wife, Louise Fuehring, provision was made for payment to her in lieu of and in full settlement of all her statutory rights, inheritance and distributive share under the laws of descent, so no question as to any of the widow's rights is presented.

On June 17, 1937, in the Marion Probate Court, Clara Fuehring as daughter of the testator, and Carl Fuehring as the sole heir at law of Lillie Leonard, who was the daughter of testator, as plaintiffs filed a complaint to construe the will of the testator naming therein as defendants The Union Trust Company of Indianapolis as trustee under said last will, The Union Trust Company of Indianapolis, Louise Fuehring, the widow, John H. Fuehring, the testator's son, and William Fuehring and Ethel Christine Fuehring, minor children of John H. Fuehring. The complaint set forth the entire will, but alleged that doubts and uncertainties had arisen as to the legal effect of Item IV and that said Item IV is

*"null, void and of no effect whatever."* (Italics supplied.)

Process was duly issued and served upon the minor defendants, William Fuehring and Ethel Christine Fuehring. Thereafter on December 15, 1937, the Marion Probate Court, finding process had duly been served upon said minor defendants, appointed an attorney of Marion County, Indiana, as guardian *ad litem* for said minors, and the guardian *ad litem* accepted said trust and filed an answer of general denial in their behalf.

On the same day and as a part of the same entry the Marion Probate Court proceeded to construe the last will of William H. Fuehring, deceased, and Item IV thereof, reciting therein it heard evidence, but failing to show any argument of counsel on the issues involved, and found and adjudged that Item IV of said will was "invalid and of no force or effect" and that all other provisions of the will were legal; that the assets belonging to said trust be distributed to the plaintiffs Clara Fuehring, Carl Fuehring and the defendant John H. Fuehring share and share alike. Thereafter the trustee made distribution pursuant to the terms of said decree. The guardian *ad litem* did not file a motion for a new trial, but did sign an O. K. to the decree, along with all other counsel representing other parties, before its entry.

On March 11, 1943, the appellants William Feuhring and Ethel Christine Fuehring as infants by their next friend filed a complaint in the Marion Probate Court against the other parties to the original action to construe the will and The Union Trust Company of Indianapolis as guardian of John H. Fuehring, to review the judgment of the Marion Probate Court construing the will of William H. Fuehring, deceased, pursuant to

§ 2-2604, Burns' 1946 Replacement (Acts 1881 Spec. Sess., ch. 38, § 665, p. 240) *et seq.*[1] During the pendency of the action the plaintiff William Fuehring became twenty-one years of age, and by order of court he was permitted to continue the prosecution of the action under his own name without the intervention of a next friend. The issues were closed on said complaint, and after a trial of such issues judgment was entered against the plaintiffs, from which the appeal was taken.

The appointment of an attorney as guardian *ad litem* is proper. However, "When the attorney accepts the trust imposed upon him by the order of the court it became his duty to investigate the law and the facts and to use due care and diligence in his efforts to protect the rights and interests of his ward . . ." *Whinery* v. *Hammond, etc., Bank, Trustee* (1923), 80 Ind. App. 282, 292, 140 N. E. 451.

The guardian *ad litem* did not file any demurrer to the complaint to construe the will, and if he had done so it would not have raised any question as to the char-

NOTE.—(1)—§ 2-2604 Review of judgments—Divorce excepted.—Any person who is a party to any judgment, or the heirs, devisees or personal representatives of a deceased party, may file in the court where such judgment is rendered a complaint for a review of the proceedings and judgment. Any person under legal disabilities may file such complaint at any time within one (1) year after the disability is removed. But no complaint shall be filed for a review of a judgment of divorce.

§ 2-2605. Review of judgments—For what had—Limit of filing.—The complaint may be filed for any error of law appearing in the proceedings and judgment, within one (1) year; or for material new matter, discovered since the rendition thereof, within three (3) years; or for both causes, within (1) year after the rendition of the judgment, and without leave of court.

acter of the construction to be given the will. *Shriver*
v. *Montgomery* (1914), 181 Ind. 108, 103 N. E. 945.
If the construction of the will contended for by the
original plaintiffs had been in connection with some
other relief sought, such as partition or quiet title, the
overruling of a demurrer for want of facts might have
been error. *Attica Bldg. & Loan Assn.* v. *Colvert* (1939),
216 Ind. 192, 23 N. E. (2d) 483. There was sufficient
doubt under the terms of the will to justify a construc-
tion, and this being the case, a demurrer for want of
facts would have been properly overruled. Therefore,
it was unnecessary for the guardian *ad litem* to file such
a demurrer in order to save any error presented by the
complaint.

The guardian *ad litem* stands in a fiduciary relation-
ship to his wards, as well as the court which appoints
him, and it is the ultimate responsibility of the court
to see that the guardian *ad litem* makes a proper defense
for his wards. Thus, the guardian *ad litem* should be
removed if he fails to put the case at issue. In an early
time in Indiana our Supreme Court said:

> "It is manifest that the judgment should be
> reversed, for the reason that the record thus dis-
> closes the fact that it was rendered without proof,
> and for failure on the part of the guardian *ad litem*
> to answer. After the demurrer was sustained the
> Court should have heard proof, as against said min-
> ors, of the allegations in the complaint; and, per-
> haps, that there might be an issue formed to which
> the same would be applicable, it rested with the
> Court to compel the guardian to put in an answer,
> at least the formal one. If he should stand in con-
> tempt, in refusing to obey the order of the Court in
> that respect, he could be removed, and another
> appointed, or other order made in regard to such
> contumacious act. But for such act the sacrifice of
> the rights of the minor defendants, which he was
> appointed to guard, should not be permitted, much

less ordered, by the Court. So much in regard to the order of the Court in entering judgment for want of an answer." *Richards* v. *Richards* (1862), 17 Ind. 636, 638.

There is nothing in § 2-209, Burns' 1946 Replacement which indicates that the guardian *ad litem* can fulfill his duty to his wards by only filing an answer of general denial when a special answer should be pleaded. In general, the same rules apply to pleading in behalf of infants that apply to adults. 31 C. J. 1157. The representation by the guardian must be more than merely perfunctory, and if the facts indicate a special answer, it is his duty to file such an answer. I Jennison Chancery Practice, pp. 43, 86.

In the action to construe the will of William H. Fuehring, the plaintiffs sought a construction that Item IV was void. It was the duty of the guardian *ad litem* to resist that construction all through the proceedings. In a suit to construe a will, if any defendant seeks a construction different from that prayed for in the complaint, he must so plead his contended construction by way of special answer setting up the construction he thinks proper to protect his own interests. An answer of general denial puts in issue only the question whether the will should be construed, and not whether it should receive any specific construction. *Rothschild, Exr.*, v. *Weinthel* (1921), 191 Ind. 85, 131 N. E. 917, 132 N. E. 687, 17 A. L. R. 1377. In fact, the guardian *ad litem* failed to put the case at issue for his defendants as to a construction favorable to them, but even after he had failed to do so, it was the duty of the Marion Probate Court to compel the guardian to file such an answer.

On the record, this was a failure to discharge part of his official duties. In 27 Am. Jur. 845, some of the

duties of the court and the guardian *ad litem* are well summarized as follows:

"When a guardian ad litem is appointed, he is regarded as the agent of the court and of the state for the discharge of its duty as parens patriae. He is an officer of the court and subject to its orders and control, and it is the obligation of the trial judge to see that he performs his duties and protects the interests of the infant. He is a fiduciary and is required to exercise the same vigilance that he would in his own action and to do for the infant what with riper judgment the infant would do for himself. He is to appear for the infant and defend the action. He should examine into the case, determine what the rights of his wards are and what defense their interest demands, and make such defense as the exercise of care and prudence will dictate. . . ."

In *McCord* v. *Bright* (1909), 44 Ind. App. 275, 290, 291, 87 N. E. 654, the court clearly notes the principles for the protection of the rights of infants by declaring:

"But here the interest of a ward of the court, a favorite of chancery, is affected. She is incapable of choosing a theory. She is incapable of choosing any representative or waiving any right. She can do no act that would operate as an estoppel. Neither can her guardian do these things for her, to her detriment. *Shamleffer* v. *Council Grove, etc., Mill Co.* (1877), 18 Kan. 24; *Whitehead* v. *Jones* (1876), 56 Ala. 152; *Driver* v. *Evans* (1886), 47 Ark. 297, 1 S. W. 518; *Cochran* v. *McDowell* (1853), 15 Ill. 10; *Bearinger* v. *Pelton* (1889), 78 Mich. 109, 43 N. W. 1042; *Wood* v. *Truax* (1878), 39 Mich. 628; *Clement* v. *Sigur* (1877), 29 La. Ann. 798; *Jones* v. *Massey* (1877), 9 S. C. 376; 15 Am. and Eng. Ency. Law, 71, 72; *Crain* v. *Parker* (1849), 1 Ind. 374; *Hough* v. *Doyle* (1846), 8 Blackf. 300; *Hough* v. *Canby* (1846), 8 Blackf. 301. It therefore becomes the duty of this court to search the record, . . ."

In this case no new motion for new trial was filed in behalf of the infant, but the court protected the infant's rights on appeal as though a motion for new trial had been filed.

When the rights of an infant are presented to this court for a determination it should be no less considerate of the infant's rights than a trial court. If the judgment in this case had been favorable to the infant, it would have been the duty of this court to have searched the record, whether properly presented or not, in order to uphold the infant's rights. *Harmon* v. *Harmon* (1945), 116 Ind. App. 140, 62 N .E. (2d) 880.

When the finding of the trial court is against the infant it is equally the duty of this court to search the record to see if every possible right of the infant defendants was properly presented, and if not, to disregard technicalities in order to obtain justice and afford relief against an inequitable result. *McCord* v. *Bright* (1909), 44 Ind. App. 275, 290, 87 N. E. 654; *Dearing* v. *Speedway Realty Co.* (1942), 111 Ind. App. 585, 598, 40 N. E. (2d) 414.

The same rule should apply to questions not presented by the briefs on appeal, for this court in *White* v. *White* (1935), 208 Ind. 314, 317, 196 N. E. 95, stated that rule as follows:

> "The rule forbidding the discussion of points not originally suggested by appellant is made for the protection of the court and only operates to excuse the court from considering questions that are not shown to have any material bearing upon the rights of the parties. Notwithstanding the failure of counsel to present the question, the court may consider and decide a question presented by the record, and may go outside the briefs of counsel for reasons upon which to base the decision in order to do justice to the parties. *Big Creek Stone Co.* v. *Seward* (1895), 144 Ind. 205, 42 N. E. 464, 43 N.

E. 5; *Haggard* v. *Stehlin* (1893), 137 Ind. 43, 35 N. E. 997; *Travelers' Ins. Co.* v. *Prairie School Township* (1898), 151 Ind. 36, 49 N. E. 1, 51 N. E. 100; *Fairbanks* v. *Warrum* (1914), 56 Ind. App. 337, 104 N. E. 983, 1141."

Appellants' petition to transfer was on the ground that the Appellate Court erroneously decided a new question of law in holding that a motion for new trial must be filed by a guardian *ad litem* in the original proceedings to construe the will in order to present any question on a complaint to review a judgment. This assignment of necessity brings before this court more than the opinion of the Appellate Court. Since the decision in *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. (2d) 399, this court is not limited to matters appearing on the face of the opinion of the Appellate Court. In both *Warren* v. *Indiana Telephone Co., supra,* and *Long* v. *Van Osdale* (1940), 218 Ind. 483, 29 N. E. (2d) 953, this court did bring up the entire record on a petition to transfer. The only way in which this court can properly determine whether a motion for a new trial was a condition precedent to alleging error in the complaint to review the judgment against these infants is for this court to search the record in order to determine whether the new precedent under the facts is properly decided.

This court may look to the whole record to ascertain the meaning and effect of a judgment of a trial court. *State ex rel. Booth* v. *Beck Jewelry Enterprises* (1942), 220 Ind. 276, 41 N. E. (2d) 622, 141 A. L. R. 876; *Fleenor* v. *Driskill* (1884), 97 Ind. 27; *Hanley* v. *Mason* (1908), 42 Ind. App. 312, 85 N. E. 732. The reasons are equally as strong for us to search the record in this case to understand the precedent established by the Appellate Court.

This complaint to review the judgment was one engrafted upon the main proceedings, and as such the trial court should have taken judicial notice of the record of the original suit, including the decree prepared by counsel together with the indorsed O. K. signed by all counsel. 23 C. J. 1112, § 1919. The decisions requiring an exhibit or the substance thereof to be set forth in a motion for a new trial do not apply in this sort of a case. There is no reason for this court to put blinders on the trial court when considering a motion for a new trial to cause it to disregard what it should know as a matter of law. The trial court in this instance knew the contents of the decree as signed by the judge construing the will, just as it knew the decree as it was entered upon the order book. The statutory motion for a new trial was designed to enable the trial courts to correct their own errors, and thus make unnecessary many appeals, but it was not intended as a device to become so ensnarled in legal technicalities that records would be needlessly encumbered, or this court prevented from considering appeals on their merits.

The decree in this case was apparently prepared by counsel, and the guardian *ad litem* who was a practicing attorney of this state, together with all other counsel signed an O. K. to the decree. The record in this case furthermore shows that the appointment of the guardian *ad litem*, the trial, finding and judgment were all done on the same day. *There is no record of any argument by counsel before the court made its finding.* It is most difficult to comprehend how such complicated questions concerning future interests could be adequately presented and passed upon with such great dispatch. If the defendant had been adults and their counsel had indorsed an O. K. on the decree, this act would have

waived any right to file a motion for a new trial, a motion to modify the judgment, or the right to take an appeal. In the case of *The Indianapolis, Decatur & Western Ry. Co.* v. *Sands, Trustees* (1892), 133 Ind. 433, 32 N. E. 722, at p. 441 the court discusses the effect of an O. K. to a decree:

> "It was signed by some of the parties, and the attorneys for these appellees indorsed it 'O. K.,' and signed their names, and it was handed to the judge. As it seems to us, but one inference could be drawn, and that is that the decree as drafted to be entered was all right, and they were giving their consent to the entry of the decree as prepared, and the court had the right to so regard it and order the decree entered at the date agreed upon, which it did. Taking the view of the case which we do, the judgment must be affirmed without considering the merits of the case. . . ."

The court also held that this precluded the consideration of a motion to modify the decree made in the trial court after its entry. But a guardian *ad litem* is not permitted to consent to a decree against his infant wards. *Hough* v. *Doyle* (1846), 8 Blackf. 300; *Crain* v. *Parker* (1849), 1 Ind. 374.

Nor is a consent decree binding on an infant when a judgment is collaterally attacked on an issue of *res adjudicata*. In *Burrell* v. *Jean* (1925), 196 Ind., 187, 204, 205, 146 N. E. 754, the court said:

> "However, such judgment, in so far as it purports to adjudicate matters not within the issues of the cause in which it is entered, is only binding on the parties thereto capable of contracting. At the time the 'consent judgment' here was rendered, Simeon Pankey was alive and a minor. His disability was such that neither he nor his guardian *ad litem* could prejudice his interest by consenting to a judgment upon a perfunctory hearing, or, by admissions or stipulations, surrender any of

his substantial rights. *Crain* v. *Parker, Admr.* (1849), 1 Ind. 374; *McEndree* v. *McEndree* (1859), 12 Ind. 97; *Richards* v. *Richards* (1861), 17 Ind. 636, 638; *Missouri Pacific R. Co.* v. *Lasca* (1909), 79 Kans. 311, 99 Pac. 616, 21 L. R. A. (N. S.) 338, 17 Ann. Cas. 605; *Kingsbury* v. *Buckner* (1890), 134 U. S. 650, 10 Sup. Ct. 638, 33 L. Ed. 1047; *Daingerfield* v. *Smith* (1887), 83 Va. 81, 1 S. E. 599; *Tennessee Coal, etc., Co.* v. *Hayes* (1892), 97 Ala. 201, 12 So. 98."

But the ultimate responsibility for the actions of the guardian *ad litem* rested with the court. When we are dealing with the rights of an infant nothing else will satisfy the demands of legal justice. It is the duty of the court to look behind mere form and technical rules which were developed to regulate the conduct of litigation where the rights of adults are involved, and to determine and to protect the substantial property rights of infants. 27 Am. Jur. 849. If the infant has no authority to employ his own attorney, if his valuable property rights are to be destroyed because his guardian *ad litem* fails to do his duty or because the trial court fails to discharge its ultimate duty to protect all the rights of an infant, the infant is deprived of his day in court.

The appellees place great stress upon the case of *Alexander* v. *Frary* (1857), 9 Ind. 481. This was an action on a note and to foreclose a mortgage on real estate. Pending the action the defendant mortgagor died, and her heirs, two of them being infants, were substituted as party defendants. A guardian *ad litem* was appointed and filed an answer in general denial. The heirs including the minor defendant appealed from a judgment foreclosing the mortgage with a deficiency personal judgment against the heirs, and did not attempt to attack the validity of the judgment by way of review. Since no bill of exceptions containing the

evidence was in the record, the court presumed the note and mortgage were properly in the evidence. The court in its opinion said:

> "Neither the adults nor the infants having moved for a new trial, nor in any other statutory mode made the evidence a part of the record, we must presume all things rightly done in the Court below."

However, *the court did reverse the judgment in part by holding that the personal deficiency judgment be reversed.* This case, decided before the adoption of the 14th Amendment to the Federal Constitution, is no authority for destroying the valuable property rights of infants because the infant was represented by inadequate counsel who failed to file a motion for new trial.

There is no question presented here by reason of any reliance on the judgment by any of the parties involved, because whatever benefits they may have acquired by virtue of the decree construing the will were taken subject to the right of an action to review the judgment. *Attica Bldg. & Loan Assn.* v. *Colvert, supra.*

If this court is to do more than pay lip service to the ancient principles of equity that all the rights of an infant must be jealously protected by the court, it must take cognizance of the growth of the law under the 14th Amendment to the Federal Constitution, which protects without distinction life, liberty or property, and provides in part, "nor shall any state deprive any person of life, liberty, or property, without due process of law."

In *Powell* v. *Alabama* (1932), 287 U. S. 45, 77 L. Ed. 78, 53 S. Ct. 55, 84 A. L. R. 527, 535, Mr. Justice Sutherland said:

> "Originally, in England, a person charged with treason or felony was denied the aid of counsel, except in respect of legal questions which the

accused himself might suggest. At the same time *parties in civil cases* and persons accused of misdemeanors *were entitled to the full assistance* of counsel." (Italics supplied.)

In determining the meaning of "due process" the court further said:

"What, then, does a hearing include? Historically and in practice, in our own country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right. The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law."

In *Roberts* v. *Anderson* (1933), 66 F. (2d) 874, the court held in a civil action that the right to a hearing included the right to assistance of counsel if requested and that the denial of counsel of a party's own choice is a denial of due process of law in a civil action. See also 16 C. J. S. 1267.

But an infant has no power to employ counsel. *Tapley* v. *McGee* (1854), 6 Ind. 56; *Trueblood* v. *Trueblood* (1856), 8 Ind. 195; *Wetherill, Administratrix* v. *Harris* (1879), 67 Ind. 452; 1 Henry on Probate 5th ed., p. 1056, § 726.

The court must see that counsel is provided—counsel competent in the particular suit at issue and controversy involved, not some other branch of the law. In the action to construe the will the court's duty would not have been satisfied by appointing counsel expert in the law of patents, admiralty, torts, contracts, banks and banking, or any other many legal subjects not involved in the proceeding, but it was the court's duty to provide counsel competent and skilled in the law of wills and

trusts, and to see that the rights of these infants were adequately protected.

Nor in this case can the good faith of the guardian *ad litem,* and it is assumed he did act in good faith, furnish any excuse or justification for the record here.

This court can only look to the record to determine whether these infant defendants had adequate or competent representation by counsel. From the record they did not, and hence they were denied due process of law, for which the judgment of the Marion Probate Court denying relief on their complaint to review the judgment should be reversed, if they were deprived of any property rights by the original decree construing the will.

This appeal should be determined on the merits of the construction of Item IV given by the trial court, and not on the ground the guardian *ad litem* failed to save error for an appeal or for an action to review the judgment. In the case of *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. (2d) 848, this Court held that a defendant, who had had seven previous convictions for various crimes, but who was then charged with receiving stolen goods, was denied due process of law when there was merely a perfunctory representation by counsel, who was not competent or adequate, as judged by the record, to protect the rights of the defendant. The court in this case made an exhaustive analysis of the Indiana cases which required adequate or competent representation by counsel, and held that when the record presented such unskilled or perfunctory representation the court would search the record and consider error which had not been assigned in a motion for new trial. This was in effect a holding that a motion for new trial was not necessary in such a case. The court correctly reasoned that to permit inadequate counsel to so preju-

dice the rights of a defendant would make due process meaningless. See also *State ex rel. White* v. *Hilgemann, Judge* (1941), 218 Ind. 572, 34 N. E. (2d) 129.

I am unable to comprehend a constitutional requirement that extends its protection to a criminal defendant who has been convicted of receiving stolen goods, and has no proper motion for new trial to present any error, and at the same time denies equal protection to infants whose valuable property rights were destroyed simply because a motion for new trial in the original cause was not properly filed and presented to the trial court. It is clear in this case these infants were denied due process of law, and in affirming the judgment of the trial court denying relief by review a shocking result is reached.

Many decisions of the United States Supreme Court holding that due process of law requires adequate or effective representation by counsel are collected in *DeMeerleer* v. *Michigan* (1947), — U. S. —, 91 L. Ed. 471.

In proceeding to determine the legality of the various clauses and provisions of Item IV of the will in question, it is well to restate certain rules of construction that our courts have applied when wills are to be construed. A will speaks as of the date of the death of the testator, and it must be construed in the light of the family situation at that time and who might be the beneficiaries at some future time under the terms of the will. *Murphey* v. *Brown* (1901), 159 Ind. 106, 62 N. E. 275; *Burrell* v. *Jean* (1925), 196 Ind. 187, 198, 199, 146 N. E. 954.

". . . partial intestacy is to be avoided, unless the language of the will compels it. *Cate* v. *Cranor* (1868), 30 Ind. 292; *Lutz* v. *Lutz* (1827), 2 Blackf. 72; *Myers* v. *Carney* (1908), 171 Ind. 379, 384, 84 N. E. 400, and

authorities cited." *Alsman* v. *Walters* (1914), 184 Ind. 565, 577, 106 N. E. 879, 111 N. E. 921.

"In considering the construction of the will all parts thereof must be construed together to form, if possible, one consistent whole. If, by such consideration, the intention of the testator is apparent his intention must prevail unless it be in conflict with established rules of law. *Grise, Admr.* v. *Weiss, Admr.* (1937), 213 Ind. 3, 11 N. E. (2d) 146." *Crawfordsville Tr. Co.* v. *Elston Bank & Tr. Co.* (1940), 216 Ind. 596, 25 N. E. (2d) 626.

If there be language in a will which is "reasonably susceptible of two different constructions, one of which will defeat and the other sustain the provisions, the doubt is to be resolved in favor of the construction which will give effect to the will, rather than the one which will defeat it." *Dykeman* v. *Jenkines* (1913), 179 Ind. 549, 556, 101 N .E. 1013. See also *Porter* v. *Union Trust Co.* (1915), 182 Ind. 637, 642, 108 N. E. 117; *Swain* v. *Bowers* (1929), 91 Ind. App. 307, 319, 158 N. E. 598.

"In construing a will, the primary rule to which all others must bend is that the testator's intent, as expressed in the will, must prevail, unless it offends against public policy or a positive rule of law. *Hutchinson's Estate* v. *Arnt, Admx.* (1936), 210 Ind. 509, 518, 1 N. E. (2d) 585, 4 N. E. (2d) 202; *Reeder* v. *Antrim* (1917), 64 Ind. App. 83, 110 N. E. 568, 112 N. E. 551." *Sipe* v. *Merchants Trust Co.* (1941), 109 Ind. App. 566, 570, 571, 34 N. E. (2d) 968.

From the record it is disclosed that both realty and personalty were involved in the gifts under Item IV of the will. Although there is authority for holding that in certain cases the court will construe such gifts on the basis that all the property is realty, (*Heilman* v. *Heilman* (1891), 129 Ind. 59, 28 N. E. 310) yet in this

case the validity of such gifts will be considered as to whether or not there is any violation of either statute concerning the unlawful suspension of the power of alienation. The prohibitions concerning realty read as follows:

> "The absolute power of aliening lands shall not be suspended by any limitation or condition whatever, contained in any grant, conveyance or devise, for a longer period than during the existence of a life or any number of lives in being at the creation of the estate conveyed, granted, devised and therein specified, with the exception that a contingent remainder in fee may be created on a prior remainder in fee, to take effect in the event that the person or persons to whom the first remainder is limited shall die under the age of twenty-one (21) years, or upon any other contingency by which the estate of such person or persons may be determined before they attain their full age." § 56-142, Burns' 1943 Replacement (1 R. S. 1852, ch. 23, § 40, p. 232).

The prohibitions concerning personalty are somewhat different:

> "No limitation or condition shall suspend the absolute ownership of personal property longer than till the termination of lives in being at the time of the execution of the instrument containing such limitation or condition, or, if in a will, of lives in being at the death of the testator." § 51-101, Burns' 1933 (2 R. S. 1852, ch. 9, § 1, p. 245).

Although there has been considerable confusion in the Indiana cases concerning the rule against perpetuities, and our cases have many times loosely referred to the above statutes as being the rule against perpetuities, they are not within the classic statement of the common law rule as given by Professor Gray in his Rule Against Perpetuities (3rd ed.) § 201, p. 174, as follows:

"No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest."

In the discussion of the problem of vesting of estates, it will be valuable to correct a misconception that exists in many cases of many jurisdictions concerning gifts over to children of a person living at the death of the testator. In 41 Am. Jur. § 53, p. 97 we find the following analysis of the situation:

"There are a few American cases which have held, on the strength of earlier English authority, that the devise of a life estate to the unborn children of living persons violates the rule against perpetuities. Jarman on Wills has suggested that the rule arose from a misconception of the meaning of the rule that a person cannot give an estate for life to an unborn person, with remainder to his issue. Instead of understanding by such a rule that it is meant that the remainder is void, it has been assumed that it asserted the invalidity not only of the gift to the issue but of the gift to the unborn person. The rule today in England and America undoubtedly is that such gifts are valid. So long as vesting is within the period permitted by the rule against perpetuities, it is immaterial that those who take were unborn when the future interest was created. *A gift over to children, including future children, of living persons cannot violate the rule, since such children must necessarily be born during the lifetime of their parents, or within the period of gestation thereafter. . . .*" (Italics supplied.)

This is undoubtedly the rule in Indiana under the decision of *Attica Bldg. & Loan Assn.* v. *Colvert, supra.* In this case the will provided for a gift in trust, for the use of testator's four sons for life, remainder over to their children. Clause 2 of the will provided:

"When all of my said sons shall be dead, then I devise the fee simple interest in all of my said real

> estate to such of my grandchildren, children of said four sons, as may then be living, share and share alike, the number to share to be determined by those living at the death of my last son and such grandchildren as shall die before the death of my last son shall have no interest in such remainder."

The court held this gift over to the grandchildren good, and upheld a complaint to review the trial court's judgment which had held such gift over invalid. Any *dicta* or decisions in earlier Indiana cases to the contrary were by this case overruled.

In *Edwards* v. *Bates* (1923), 79 Ind. App. 578, 139 N. E. 192, the testator gave an estate to his widow for life, remainder to his daughter Mary for life, but if Mary should die having lawful issue at the time of her death, then to such issue as may then be living. If Mary shall leave no children surviving her, then to Frances and Cynthia in equal parts, but if they or either should be dead at that time then to their children, they being my grandchildren. The court held that the will did not suspend the power of alienation at page 587:

> "All devisees who by any possibility could take were, at the time of the testator's death, and at all times thereafter, in being, except the contingent remaindermen described as the possible issue of Mary Emily Edwards, and they would, of necessity have to be alive at her death. That does not contravene the statute. . . ."

If the restraint ceases at the end of lives in being at the time of the testator's death, the gift is good even though all the beneficiaries may not be in being at the testator's death.

The difficulty has arisen when a gift provides a restraint upon alienation for a number of years. It is clear that if the trust by its terms cannot possibly

extend beyond lives in being at the testator's death, the power of alienation is not suspended longer than lives in being. Thus a gift in fee to a grandchild, but if such grandchild should before she arrives at the age of forty (40) years attempt to convey, mortgage or encumber any part of said real estate, then over to other devisees, does not violate the statute, since the power to alienate cannot be suspended under the gift longer than her life, and she was in being at testator's death. *Matlock* v. *Lock* (1905), 38 Ind. App. 281, 73 N. E. 171.

In *Vaubel* v. *Lang* (1923), 81 Ind. App. 96, 140 N. E. 69, the gift of real estate was to grandchildren Elizabeth and Hulda, but if either should die leaving no child surviving, then her share to her sister, and if both should die leaving no children surviving, then to my heirs. "Said children (grandchildren) shall not dispose of or encumber said real estate until they arrive at the age of 21 years, after which they may convey the same in fee simple . . ." The court held that the testator gave a determinable fee to Elizabeth and Hulda which ripened into a fee simple at the time they arrived at age 21, which would thereafter cut off the executory devise to "my heirs," and that there was no improper restraint on alienation.

Under Clause B the trust for John H. Fuehring was valid because in no event could it continue longer than his life in the event that he survived the testator. *Matlock* v. *Lock, supra; Vaubel* v. *Lang, supra; Sexton* v. *Cronkhite* (1920), 74 Ind. App. 245, 127 N. E. 829; *Williams* v. *Harrison* (1919), 72 Ind. App. 245, 123 N. E. 245; Leach, "The Rule Against Perpetuities and the Indiana Perpetuities Statute," 15 Indiana Law Journal 261, 275.

The gift over to the children of John H. Fuehring was very carefully limited "for the use and benefit of his child or children until the youngest of his children *who may be living at the time of my death, shall arrive at the age of thirty-five years . . .*" (Italics added.) At the time of the testator's death June 10, 1934, William Fuehring, born October 12, 1923, was eleven (11) years of age, and Ethel Christine Fuehring, born November 28, 1926, was eight (8) years of age. These were the only children John H. Fuehring ever had, and they were both lives in being at the testator's death. The appellees assert that there would be no fixed time for the termination of the trust at all if the youngest should die before becoming thirty-five (35) years of age. In this they are mistaken because the law reads into the gift a termination of the trust if Ethel Christine should die before becoming thirty-five (35) years of age. *Roe* v. *Vingut* (1889), 117 N. Y. 204; *Jacoby* v. *Jacoby* (1907), 188 N. Y. 124, 129; III Scott on Trusts, § 334, pp. 18, 23. Nor would the possibility of children to John H. Fuehring after the death of the testator sharing in the gift over to his children make the gift to the class bad, because they would be persons in being at the time of the death of John H. Fuehring and the class would then be closed. In addition to that, the rule in Indiana is that upon gifts to the class the class closes when the time for distribution arrives and that after born children will be excluded. *Williams* v. *Harrison* (1919), 72 Ind. App. 245, 123 N. E. 245. Therefore the gift over to the children of John H. Fuehring must be construed that the trust terminates upon the death of Ethel Christine, or before her death if she arrived at the age of thirty-five (35) years. In no event can the trust gift to John H. Fuehring or his children last

longer than lives in being, which does not violate the Indiana rule.

In Clause C the trust gifts are clearly to testator's daughter Lillie Leonard for life, remainder to Carl Fuehring for life, remainder in fee simple to testator's heirs at law at the time of the death of Carl Fuehring. By the construction of this clause as void, appellants are deprived of valuable property rights in remainder of contingent property interests in violation of the specific terms of the will of the testator.

Under Clause C the gift was to testator's daughter for life remainder over to the beneficiaries under Clauses B and C. The court by declaring Clause D void deprived appellants of additional property rights.

In view of the fact that this case is not going to be tried again, it is unnecessary to extend this opinion with reference to Clause E which establishes the trust as a spendthrift trust. It is sufficient to state that the authorities generally agree that such a trust is proper in Indiana. Gavit, Future Interests, Descent and Wills, pp. 244, 245. But even if it should be held that spendthrift trust limitations under Clause E were illegal, the entire clause could be stricken out and the rest of the will given proper effect. *Swain* v. *Bowers* (1927), 91 Ind. App. 307, 158 N. E. 598; *Quilliam* v. *Union Trust Co.* (1924), 194 Ind. 521, 142 N. E. 214.

Therefore it is my opinion that this appeal should have been decided upon its merits, that the Marion Probate Court erred in its finding and judgment that Item IV of the will was void, and that the Marion Probate Court erred in its finding and judgment against appellants on their complaint for review of the judgment construing the will.

Gilkison, J.—Concurring.

NOTE.—Reported in 73 N. E. (2d) 764.