(31 P.3d 328)

No. 85,093

ELIZABETH WHITE, a Minor, by and through R. STEVEN WHITE, her Father, *Appellant*, v. ALLIED MUTUAL INSURANCE COMPANY, *Appellee*.

Opinion filed September 21, 2001.

*Dennis L. Horner*, of Horner and Duckers, Chartered, of Kansas City, for appellant.

*Craig C. Blumreich*, of Gehrt & Roberts, Chartered, of Topeka, for appellee.

Before BEIER, P.J., PIERRON, J., and BUCHELE, S.J.

BEIER, J.: This case requires us to decide whether an insurance company is bound to a settlement agreement negotiated on behalf of an injured minor if the company changes its mind about the value of the claim before scheduling a "friendly" hearing intended by both sides to obtain approval of the settlement.

Elizabeth White, 15, was a passenger in a car driven by her boyfriend and owned by her father, Steven, when the car was involved in a single-car accident. She suffered severe and permanent injuries to her right hand. Defendant Allied Mutual Insurance Company (Allied) was the liability carrier on the car.

Allied agreed with Steven to settle Elizabeth's claim for $45,000, subject to approval of the court in a "friendly" hearing, and Allied turned the matter over to counsel to arrange for and conduct the hearing. Allied's counsel made initial contact with Steven about the hearing. Then there was a sudden and lengthy silence.

Several months later, Steven contacted Allied because Allied had neither initiated the hearing nor paid the $45,000. Allied informed Steven that it had decided not to settle after all. Since negotiating with Steven and arriving at the $45,000 settlement amount, it had become aware of legal authority supporting a defense to Elizabeth's claim.

Steven sought specific enforcement of the settlement agreement. The district court granted summary judgment in favor of Allied, finding Steven "had no legal authority to enter into a binding settlement contract on behalf of his minor daughter and, therefore, Allied lawfully withdrew its offer to settle. Without the existence of a settlement contract the plaintiff's breach of contract lawsuit must be dismissed."

The standard of review for a motion for summary judgment is well established and often recited:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c). On appeal, we apply the same rules, and where we find reasonable minds could differ as to the con-

clusions drawn from the evidence, summary judgment must be denied." *Jackson v. U.S.D. 259*, 268 Kan. 319, 322, 995 P.2d 844 (2000).

A settlement agreement is a type of contract and, therefore, governed by contract law. See *Marquis v. State Farm Fire & Cas. Co*, 265 Kan. 317, 323-24, 961 P.2d 1213 (1998). To create a contract, the parties involved in making the contract must have the capacity to contract. See *Aetna Life & Cas. v. Americas Truckway Systems, Inc.*, 23 Kan. App. 2d 315, 319, 929 P.2d 807 (1997) (there must be at least two parties to a contract); see also *U.S.D. No. 443 v. Kansas State Board of Education*, 266 Kan. 75, 88, 966 P.2d 68 (1998) (municipal corporations cannot bind themselves by a contract in a manner that is beyond the scope of their powers).

Steven argues that he and Allied had a binding oral contract. Allied argues that there was no contract because the court never approved the settlement agreement and Steven lacked the capacity or legal authority to enter into an enforceable contract on his own.

Both parties cite *Railway Co. v. Lasca*, 79 Kan. 311, 99 Pac. 616 (1909). In *Lasca*, the minor plaintiff was 18 months old when his hands were run over by the wheel of a railroad car. His parents settled his claim against the railway company for $100, and the settlement was approved by the district court. Later, a second suit was brought to set aside the judgment entered on the basis of the settlement. The district court ordered the judgment set aside and the Supreme Court affirmed, finding the parents could negotiate for a fair adjustment of the controversy, but a settlement could not bind the infant without court approval after careful review. 79 Kan. at 316; See *Childs v. Williams*, 243 Kan. 441, 441, 757 P.2d 302 (1988) ("Because a minor can disavow a contract within a reasonable time after reaching majority [under K.S.A. 38-102], it is necessary to reduce a minor's settlement to judgment with court approval to make it binding."); *cf. Myers v. Anderson*, 145 Kan. 775, 67 P.2d 542 (1937) (mother lacked authority to settle child's cause of action for support from father; trial court erred in holding mother's settlement with father bars child's recovery).

Thus there is ample authority in Kansas for the idea that a minor is not bound by a settlement agreement such as the one in this

case until court approval has been obtained. Even then, the minor may escape the settlement if the review hearing was inadequate to protect his or her interests. See *Leslie v. Manufacturing Co.*, 102 Kan. 159, 164, 169 Pac. 193 (1917). And courts in other jurisdictions have applied this rule to permit minors to repudiate or withdraw from a settlement *prior to* its approval by the court. See *e.g.*, *Dacany v. Mendoza*, 573 F.2d 1075, 1079-80 (9th Cir. 1978) (applying Guam law; settlement voidable at election of minor until it receives court's imprimatur); *Scruton v. Korean Air Lines Co.*, 39 Cal. App. 4th 1596, 1608, 46 Cal. Rptr. 2d 638 (1995) (compromise of claim could be repudiated by guardian for minor at any time until approval rendered); *Wreglesworth v. Arctco, Inc.*, 316 Ill. App. 3d 1023, 1027-28, 738 N.E.2d 964, 969 (2000) (release of minor's claims ineffective absent probate court approval). We agree that this is logical. The question becomes: Does the party responsible for paying the settlement amount have the same right?

Steven is correct that the public policy behind the requirement of court approval is protection of the minor's interests, not those of the minor's opponent. Kansas' appellate decisions repeatedly urge reviewing courts to exercise extensive oversight, ensuring that the injured minor's claims are not sold short by an agreed settlement merely outlined at a "friendly" hearing. As we said in *Baugh v. Baugh*, 25 Kan. App. 2d 871, 872-73, 973 P.2d 202 (1999): "The district court may not simply rely on the fact that the minor's parents have consented to the proposed agreement. Instead, the court must determine whether the agreement is in the minor's best interests." See also *Leslie*, 102 Kan. at 164 (city court's approval of settlement between defendant and injured minor's father not bona fide; "merely a complaisant and perfunctory acquiescence"); *Lasca*, 79 Kan. at 316-19; *cf. Perry v. Umberger*, 145 Kan. 367, 65 P.2d 280 (1937) (district court approval of settlement upheld because it engaged in full examination of facts of accident and extent of minor's injuries). The Alabama Supreme Court, whose language was relied upon in *Lasca*, characterized the agreement of a minor's next friend to a settlement amount as "nugatory."

" 'It is as if it were not and had never been. The court may upon being advised of the facts, upon hearing the evidence, enter up a valid and binding judgment

for the amount so attempted to be agreed upon, but this [is] not because of the agreement at all—that should exert no influence—but because it appears from the evidence that the amount is just and fair, and a judgment therefor will be conservative of the minor's interests.'" *Lasca*, 79 Kan. at 317 (quoting *Tennessee v. Coal, Iron & Railroad Co. v. Hayes*, 97 Ala. 201, 209, 12 So. 98 [1892]).

The parties have directed our attention to only one case, from New York, in which a paying party asserted a right to withdraw its settlement offer to a minor's parent between the time the deal was struck and the time the court reviewed it. In that case, *Wizniewski v. Parks*, 169 Misc. 2d 326, 645 N.Y.S.2d 992 (1996), a father brought a personal injury suit after his child was bitten by a dog owned by neighbors. The father accepted a settlement offer from the defendants on January 11, 1996, but his acceptance noted that the required hearing to obtain court approval could not be completed until the child returned to the country sometime in September 1996. On January 15, 1996, the defendants purported to reserve the right to withdraw the offer if the child would not be available within 60 days. A January 30, 1996, letter reiterated this intention.

The *Wizniewski* court found the settlement agreement was an executory accord, defined as "an agreement embodying a promise express or implied to accept at some future time a stipulated performance in satisfaction or discharge in whole or in part of any present . . . cause of action." 169 Misc. 2d at 328. The executory accord was binding on the defendants, even though it called for performance to occur at a time after its making. Because the agreement contemplated performance within a reasonable time, the defendants' attempt to reserve a right to unilaterally terminate the accord was ineffective. In the period between the father's acceptance of the offer on his child's behalf and approval by the court, the defendants were not "free to disavow or repudiate their contract." 169 Misc. 2d at 330.

The *Wizniewski* court rejected the defendants' argument that it would be "ludicrous" to enforce a settlement agreement against the defendants while permitting the minor to repudiate it:

"[I]nfants have been free to enter into contracts which can be subsequently repudiated and this rule derives from the common law and flows as a natural con-

sequence from the legal status of infants. The function of an . . . infant settlement motion or proceeding, as Plaintiff ably points out, is to provide Defendants with an ability to obtain an enforceable settlement agreement so that cases just like the present one can be resolved. Plaintiff cannot now obtain an order from this Court compelling payment on this executory accord since the . . . infant settlement proceeding has not been completed. To that extent, Defendants are precisely correct. [Citation omitted.] In the posture of this case, however, the executory accord between the parties operates as a bar to Defendants' ability to obtain summary judgment [on the merits of the minor's claim]. Having found an offer and an acceptance resulting in an executory accord, this Court finds no difficulty, conceptually or otherwise, in finding that the settlement agreement reached by the parties remains subject to the subsequent review by this Court before it becomes a final settlement. During the interim between acceptance and Court disposition, however, the Defendants do not remain free to disavow or repudiate their contract with Plaintiff." 169 Misc. 2d at 330.

Kansas cases have recognized the doctrine of executory accord. See *Gillick v. Brite Voice Systems, Inc.*, 267 Kan. 420, 425, 981 P.2d 1165 (1999) (settlement agreement was executory accord; plaintiff could enforce agreement but could not then revive original claim); *Coffeyville State Bank v. Lembeck*, 227 Kan. 857, 860-61, 610 P.2d 616 (1980) (executory accord operates as suspension of original claim; if debtor breaches accord, creditor may enforce prior obligation unless creditor has already sued on accord and recovered judgment); *cf. Elliott v. Whitney*, 215 Kan. 256, 259-60, 524 P.2d 699 (1974) (subsequent written agreement breached by defendant governed plaintiff's rights rather than oral agreement; written agreement constituted novation or substituted contract, not "executory accord").

We are persuaded that this is one of the rare situations suitable for application of the doctrine of executory accord. The executory accord is binding on Allied, which does not dispute that it made an offer to settle Elizabeth's claim for $45,000 or that the offer was accepted on her behalf by Steve. Although our precedents are clear that the resulting agreement was not binding on Elizabeth until a court approved it, Allied was bound not to revoke or attempt to withdraw its offer prior to the friendly hearing that it undertook to schedule. To the extent this rule results in "preferential" treatment for minor plaintiffs who retain their historical flexibility pending

court approval, it is preferential treatment consonant with the express public policy underlying the court approval requirement.

This case must be reversed and remanded to district court for the hearing Allied promised. At that hearing, Allied shall not take the position that it offered or should have offered anything less than the $45,000 already accepted. Of course, the district court should perform the careful review of the matter required by the cases we have cited and conclude on its own whether the settlement adequately protects the interests of Elizabeth.

We would be remiss if we did not make one additional observation regarding the peculiar facts of this case. Allied's apparently deliberate prevention of the occurrence of a condition precedent to the settlement's effectiveness could provide another ground for reversal.

"A condition precedent is something that it is agreed must happen or be performed before a right can accrue to enforce the main contract. It is one without the performance of which the contract, although in form executed and delivered by the parties, cannot be enforced. A condition precedent requires the performance of some act or the happening of some event after the terms of the contract, including the condition precedent, have been agreed on before the contract shall take effect. (See Words and Phrases, Conditions Precedent, Vol. 8, pp. 713-785.)" *Wallerius v. Hare*, 194 Kan. 408, 412, 399 P.2d 543 (1965).

The "friendly" hearing intended to obtain court approval of the settlement agreement qualified as a condition precedent for the settlement agreement. Allied undertook to arrange the hearing and then refused to go forward with it. This it could not do.

" 'The rule is clear and well settled, and founded in absolute justice, that a party to a contract cannot prevent performance by another and derive any benefit, or escape any liability, from his own failure to perform a necessary condition. [Citations omitted.] And this is the universal rule. [Citations omitted.]' " 194 Kan. at 412

Although the record does not disclose exactly when Allied's counsel determined that there was a substantive defense to Elizabeth's claim, it is reasonable to assume that this determination prompted the sudden and prolonged silence. When Steven could stand the suspense no longer, he took the initiative to find out why neither the hearing nor a check for $45,000 had materialized. It is

fortunate for Elizabeth that he became curious when he did, as it is obvious that Allied and its counsel were content to let the statute of limitations run before they informed Steven that the deal he was waiting to finalize had, in their view, evaporated. Although their tactic was not unethical, it was unprofessional, given their previous enthusiastic pursuit of the settlement and subsequent preliminary contracts regarding the hearing they promised to set up.

Reversed and remanded for further proceedings consistent with this opinion.