No. 81,403

THOMAS GILLICK, *Appellee,* v. BRITE VOICE SYSTEMS, INC.,
*Appellant.*
(981 P.2d 1165)

Opinion filed May 28, 1999.

*Eric B. Metz,* of Triplett, Woolf & Garretson, LLC, of Wichita, argued the cause and was on the brief for appellant.

*Richard D. Greene,* of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This case involves the validity of an interest penalty award on commissions under K.S.A. 44-342(b) arising from the enforcement of a settlement agreement. The employee, Thomas Gillick, sued his former employer, Brite Voice Systems, Inc. (Brite), claiming commissions owing with interest, additional K.S.A. 44-342(b) statutory penalty interest, fraud, and attorney fees. A settlement of $35,000 was reached. (Although the district courts and parties referenced K.S.A. 44-315 and K.S.A. 44-342[b] and [c], we believe that K.S.A. 44-342[b] is the applicable statute under the facts of this case.) Payment under the settlement was not made as agreed to. Gillick moved to enforce the settlement agreement. The district

court ordered payment of the $35,000 instanter. Brite complied. Finding that the settlement of $35,000 reflected unpaid commissions, the district court denied attorney fees but assessed a K.S.A. 44-342(b) statutory penalty against Brite for willful failure to pay the commissions. Brite appeals from the $9,642.50 K.S.A. 44-342(b) penalty judgment.

Our jurisdiction is under K.S.A. 20-3018(c) (a transfer from the Court of Appeals on our motion).

The issue is whether the K.S.A. 44-342(b) penalty was proper. In resolving the issue, we discuss Gillick's election to enforce the settlement agreement which, under the facts here, is an executory accord. We find no basis for assessing a K.S.A. 44-342(b) penalty interest against Brite and reverse.

## FACTS

Gillick was employed and living near Boston. He was approached by Brite with an offer of employment. Brite is a Kansas corporation engaged in the telecommunications business. Brite offered Gillick a position as "Director of Strategic Accounts - Asia/Pacific Region." The written offer stated Gillick's fixed salary would be $75,000 together with quarterly commissions, relocation costs, and allowances for various monthly expenses. Gillick accepted the position and moved to Singapore. He later transferred to Brite's Wichita office. He was assured that all earned commissions would be paid. When Brite did not pay the commissions Gillick believed he had earned, Gillick resigned. After resigning he sued on his employment agreement.

The litigating parties entered into voluntary mediation and agreed to a settlement of $35,000. Under the terms of the settlement, Gillick agreed to release Brite from all present and future claims. Brite orally agreed to pay the $35,000 within 30 days—by April 29, 1998. Brite reduced the agreement to writing and prepared a journal entry of dismissal with prejudice. Gillick signed both documents. The approved journal entry and signed agreement were mailed to Brite's counsel on April 3, 1998.

On April 20, after the agreement was signed by both parties, Brite raised issues concerning Gillick's Singapore income taxes as

a condition for payment of the $35,000. Gillick's employment agreement provided that he was responsible for payment of his income tax liabilities. Brite maintained that if Gillick did not pay his taxes, Singapore law would require Brite to do so. Because Gillick did not agree to pay his Singapore income tax liabilities, Brite refused to pay the $35,000. Brite does not dispute that it was aware of the Singapore tax issue before the settlement.

Gillick then filed his motion to enforce the settlement agreement.

In ruling on Gillick's motion District Judge Bell said:

"This is a classic case of what the French call l'espirit de l'ascenseur. That is the spirit of the staircase. At the time of the second Empire Frances' ballrooms were customarily built on the second floor and had a large, winding staircase leading up to it. And attendees who wanted to engage in the witty exchange of bon mots frequently would have a thought on the staircase on the way out they wished they [had] said during the ball, and that's exactly what Brite Voice is doing here.

"This agreement is complete in and of itself. . . . [The] evidence is clear that a settlement was made and it was agreed to, and there will be no further weaseling on the payment of it."

Judge Bell ordered instanter payment of the $35,000 plus a 29% penalty under K.S.A. 44-342(b). In a hearing on Brite's motion for reconsideration, Judge Corrigan reasoned that the $35,000 represented unpaid commissions and Brite's failure to honor the settlement agreement constituted a willful failure to pay commissions, but reduced the penalty to $9,642.50.

## DISCUSSION

The parties do not agree on the standard of review. Brite contends no deference is owed to the district court, while Gillick insists that deference must be given to the district court's findings of fact. A settlement agreement entered into by the parties is a written agreement, and we are free to determine its construction and legal effect. *Boos v. National Fed'n of State High School Ass'ns*, 20 Kan. App. 2d 517, 522, 889 P.2d 797 (1995). The standard of review is de novo.

Brite challenges the district court's authority to award a K.S.A. 44-342(b) statutory penalty for failure to pay under the settlement agreement. Brite contends the release provisions in the settlement

agreement disposed of Gillick's claim for statutory penalties under the Kansas Wage Payment Act, K.S.A. 44-312 *et seq.* Gillick responds by suggesting the settlement agreement did not displace his underlying wage claims. He contends the penalty was proper because substantial competent evidence supports the district court's finding that the settlement reflected unpaid commissions and that Brite's failure to honor the agreement was willful.

The pertinent portions of the agreement provided:

### "RELEASE AND SEVERANCE AGREEMENT

. . . .

"WHEREAS, Gillick has filed a lawsuit . . . styled *Thomas Gillick, Plaintiff v. Brite Voice Systems, Inc., Defendant* (the 'Lawsuit');

"WHEREAS, Gillick desires to settle fully and finally all differences between him and Employer, and Employer desires to settle fully and finally all differences it has with Gillick;

"WHEREAS, the consideration being provided by Employer hereunder is consideration that Gillick would not otherwise be entitled to receive;

. . . .

"NOW, THEREFORE, in consideration of the mutual promises herein contained, it is agreed as follows:

"1.  Conditioned upon Gillick's accepting and not revoking this Agreement, Employer agrees to pay Gillick the sum of $35,000, upon closing of this Agreement and upon his counsel's execution of a Journal Entry of Dismissal with Prejudice in the Lawsuit.

"2.  The parties hereto agree that all claims in the Lawsuit between Gillick and Employer shall be immediately dismissed with prejudice, with each party to bear their own attorneys' fees and costs, and counsel for Gillick and Employer shall execute at or before closing and file a Journal Entry of Dismissal with Prejudice to effectuate this dismissal.

"3.  Gillick, of his own free will, voluntarily releases and forever discharges Employer, and its directors, successors, predecessors, affiliated entities, current and former, employees, agents, attorneys, officers and directors (hereinafter 'Employer Releasees'), *from all claims, liabilities, demands, damages, causes of action, attorneys' fees, costs, agreements, promises, and rights of action of whatever kind or nature which he now has or claims to have against Employer or any of Employer's Releasees,* arising out of or in consequence of Gillick's employment or termination of employment with Employer, or due to any affiliation with Employer or Employer Releasees. *This Release includes, but is not limited to, claims for unpaid commissions; all claims made in the Lawsuit; claims of wrongful discharge or wrongful termination, or those claims arising under any purported contract, written or oral, express or implied; claims under the Fair Labor Stan-*

*dards Act, the Kansas Overtime Law, the Kansas Wage Payment Act, [and other state and federal claims].*

. . . .

"7. Gillick's release contained in this Agreement may be pled by Employer Releasees as a complete defense to any claim or entitlement which may hereafter be asserted by Gillick in any suit or claim against Employer Releasees or on account of any matters or things whatsoever, up to and including the present time of execution hereof.

. . . .

"9. . . . *Gillick agrees and warrants that he will be solely responsible for payment of income taxes, if any, on such consideration. Gillick further agrees to indemnify and hold harmless Employer and Employer Releasees from any claims, damages, penalties, taxes, interest or liability related to the consideration received.* Such claims include, but are not limited to, claims arising out of Gillick's characterization and/or reporting of *such consideration* of any taxing authority and *any claims for income taxes, penalties or interest payable on such consideration.*" (Emphasis added.)

Brite refused to pay based on a tenuous argument regarding Gillick's income tax liability under his employment agreement. The settlement agreement references income taxes only with respect to Gillick's potential tax liability as a result of the $35,000 payment. Brite contends it did not release Gillick from its tax claims under the employment agreement. However, any claims Brite may have had regarding tax liability under the previous employment agreement were not addressed in the settlement agreement. Thus, Brite's refusal to pay the $35,000 based on income tax issues constituted a breach of the agreement.

The district court correctly observed that the tax issue was clearly an afterthought of Brite and was improperly asserted as a condition precedent to payment. The parties reached a settlement, reduced it to writing, and signed the agreement.

The agreement made no provision for default of payment. Although we understand the district court's effort to craft a penalty award, we disagree with the imposition of a K.S.A. 44-342(b) penalty under the facts here. Gillick agreed to release Brite from his claims under the Kansas Wage Payment Act. Thus, Brite could not be held liable for willful failure to pay sales commissions under K.S.A. 44-342(b) when Gillick successfully enforced the settlement agreement.

The settlement agreement was an executory accord. See *Elliott v. Whitney,* 215 Kan. 256, 260, 524 P.2d 699 (1974). As we said in *Coffeyville State Bank v. Lembeck,* 227 Kan. 857, Syl. ¶ 2, 610 P.2d 616 (1980):

"An executory accord operates as a suspension of the original claim and, in the event of breach of an executory accord by the debtor, the prior obligation is again enforceable by the creditor. Where, however, the creditor sues on the accord and recovers a judgment, rather than suing on the original claim, the creditor is estopped from attempting to revive the original claim."

In *Coffeyville State Bank,* the Bank sued its debtor, Lembeck, for judgment on a promissory note. The parties entered into a settlement agreement. The action on the note was dismissed without prejudice. The Lembecks failed to pay under the terms of the settlement agreement, as Brite did here. The Bank then filed an action for and obtained a judgment on the settlement note. While obtaining satisfaction of the judgment the Bank learned Joseph Lembeck's father died and Joseph would inherit one-half of a $250,000 estate. The Bank sued on the original note, claiming it could pursue the underlying note because the settlement agreement was an executory accord and not a novation. (The two concepts are distinguished in *Elliott,* 215 Kan. at 259-60). Finding the settlement agreement to be an executory accord, we held the breach of the settlement agreement gave rise to a claim on the original note. The bank had a choice of remedies when the breach occurred.

"The bank could have sued on the original note, giving the Lembecks credit for the value of the security surrendered, payments made and the land deeded, or the bank could have brought an action on the accord. The bank elected the latter and has obtained judgment and satisfaction thereof. This clearly presents an election of remedies which estops the bank from suing on the original note. Restatement of Contracts § 417 (1932)." 227 Kan. at 860-61.

Gillick elected to enforce the settlement agreement by filing a "Motion to Enforce Settlement" and obtaining a judgment on the agreement. Gillick is estopped from attempting to revive his original claim. He sought to enforce the accord and by doing so elected his remedy as he had the right to do. See Restatement (Second) of Contracts § 281(2) (1979). He cannot now take an inconsistent

position and argue the penalty was properly awarded on his underlying wage claims.

Gillick suggests we should "affirm the trial court on the basis that its result was correct even if for the wrong reasons." (Citing *Johnson v. Board of Pratt County Comm'rs,* 259 Kan. 305, 913 P.2d 119 [1996].) Gillick reasons that Brite's repudiation has prompted further litigation, thus, the K.S.A. 44-342(b) penalty interest of $9,642.50 would serve as a reasonable attorney fee under the circumstances.

The district court declined to award attorney fees because K.S.A. 44-342(b) did not provide for attorney fees. No cross-appeal was taken from the attorney fee ruling.

The question is not properly before the court.

Reversed and remanded. The district court is ordered to vacate the judgment of $9,642.50 for K.S.A. 44-342(b) statutory penalty interest.

ABBOTT, J., not participating.

GARY W. RULON, J., assigned.